F.N. FAUSING TRADING
ApS, Appellant,

v.

ESTATE OF Dr. Ihsan BARBOUTI,
Deceased, Appellee.

No. 01–92–00143–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 25, 1992.

Rehearing Overruled Jan. 28, 1993.

Brian E. Bro, Stephen D. Ingram, Keith D. Maples, Houston, for appellant.

Thomas R. McDade, Albert R. Lohse, C. Thomas Kruse, Houston, for appellee.

Before O'CONNOR, WILSON and PRICE *, JJ.

## OPINION

O'CONNOR, Justice.

This Court is asked to decide if the trial court committed reversible error in striking the plaintiff's pleadings and dismissing the case after a representative of the plaintiff did not appear for a deposition. We find it did and reverse the judgment and remand the cause.

The record in this case consists of a 615–page transcript composed of pleadings, motions, orders, the deposition of Frede N. Fausing, documents produced at his deposition, Fausing's response to interrogatories, and the transcription of the hearing on the

*. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. "ApS" is the Danish equivalent to the American "Inc."

motion to quash the notice of deposition, which was attached to a motion for rehearing. There is no statement of facts.

### Fact summary

The plaintiff, F.N. Fausing Trading ApS,[1] a Danish corporation, filed suit against Dr. Ihsan Barbouti, the defendant, and he filed a general denial. The plaintiff's first amended petition specified the amount of its claim for goods and services, and attached invoices supporting the claim. Frede N. Fausing (Fausing), president of the plaintiff and a citizen of Denmark, was deposed by the defense counsel in Houston, and Fausing produced all of the documents requested in his possession and control. During the deposition, Fausing testified he was the president of the plaintiff and the managing officer of Hanmark ApS.[2] Hanmark contracted with the defendant, and this contract gave rise to the suit. Fausing further testified Hanmark was in bankruptcy, and Hanmark's claim against the defendant was assigned to the plaintiff by Hanmark's bankruptcy receiver in Denmark. Fausing stated he was the person with knowledge of all claims by him, individually, or by the plaintiff against the defendant.

The plaintiff filed a motion for summary judgment. On September 26, 1991, the defendant issued notices of intention to take the deposition by videotape of Poul Helmuth Petersen, Hanmark's bankruptcy curator in Denmark, and the corporate representatives of both F.N. Fausing Trading and Hanmark. The defense counsel did not consult with plaintiff's counsel before issuing the notices. Many of the same documents the defendant had requested in the deposition notice for Fausing, individually, were requested in these three deposition notices. The defendant also requested the books and records for Hanmark for the past 20 years.

2. Fausing and his wife own all the stock in Hanmark ApS.

The plaintiff filed a motion to quash the deposition notices for several reasons: (1) its counsel had a trial scheduled during the time period of these depositions; (2) its counsel already had depositions scheduled for October 7, 1991; (3) Fausing, the corporate representative of Hanmark and the plaintiff, had just flown from Denmark to give his deposition, individually, in this case two weeks before the issuance of the new deposition notices; and (4) Petersen, a lawyer in Denmark serving as bankruptcy curator for Hanmark, was not in the plaintiff's control to compel his attendance in the United States for deposition. The defendant filed a motion to compel discovery regarding these depositions.

On October 11, 1991, the court held a hearing on the plaintiff's motion to quash deposition notices and the defendant's motion to compel. The trial court ordered the plaintiff to produce the plaintiff's corporate representative, Fausing, for deposition, because Fausing's earlier deposition was taken in his individual capacity. The court ruled if the plaintiff did not have access to the additional records requested by the defendant, the plaintiff could present that information at the deposition of its corporate representative. During the hearing, the plaintiff's counsel stated he thought he could produce a designated representative of the plaintiff within 30 days. The court signed an order compelling the appearance of the plaintiff's corporate representative and the production of the requested documents within 30 days of the date of the order.

Later, plaintiff's counsel was advised that Fausing's chronic back condition worsened and his treating physician said he could not travel overseas. Because Fausing was the only person who could testify as the plaintiff's corporate representative, the plaintiff filed a motion for an extension of time and a motion for leave for expedited hearing on the motion. The plaintiff wanted the motion to extend to be heard before the 30–day deadline set by the trial court. The trial court denied both the motion for leave for expedited hearing and the motion for protective order, without a hearing. The court made a notation in the file to "let parties work out date for deposition."

Plaintiff's counsel informed the defendant that Fausing's physicians said he could probably travel in mid-January of 1992. The defendant, nevertheless, refused to reschedule the deposition. Instead, the defendant filed a motion to strike pleadings and for sanctions. On December 20, 1991, without a hearing, the trial court granted the defendant's motion to strike pleadings and for sanctions and dismissed the plaintiff's case with prejudice. The order merely stated that the trial court granted the defendant's motion to strike and for sanctions. The trial court made the following docket entry:

> 12/20/91 Mtn. to Strike Pleadings granted. I find the Pl.—and not its atty. has frustrated the discovery process and refused to follow rules of this court. No lesser form of sanction will suffice against this Danish Corporation and its principals. The case is dismissed.

The plaintiff filed a motion to reconsider ruling on the defendant's motion to strike pleadings and for sanctions. He requested this motion be set for hearing. The trial court refused the request for oral hearing and denied the motion to reconsider.

### 1. Striking pleadings

In its only point of error, the plaintiff argues the trial court committed reversible error in striking the plaintiff's pleadings and dismissing the case for Poul Helmuth Petersen, and both the designated representatives of the plaintiff and Hanmark ApS' failure to appear at the deposition.

The trial court should impose the ultimate sanction only when the party so abuses the rules of procedure, that the trial court can presume the party's position lacks merit, and it would be unjust to permit the party to present the substance of that position to the court. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991). The bounds of permissible sanctions are limited by the rules and by constitutional due process. *Id.* Rendition of default judgments as a discovery

sanction ought to be the exception rather than the rule. *Id.* at 919. There are three legitimate purposes for discovery sanctions: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (1992). In *TransAmerican,* the Texas Supreme Court established a two-step process for determining if sanctions were properly imposed: (1) the sanctions must relate directly to the abuse; and (2) the sanctions must not be excessive.

### a. *Sanctions must relate directly to the abuse*

The Texas Supreme Court recently said "a just sanction must be directed against the abuse and toward the prejudice caused the innocent party." *TransAmerican,* 811 S.W.2d at 917. Here, the defendant did not prove that it was in any way prejudiced by the delay. During the hearing on the plaintiff's motion to quash and the defendant's motion to compel discovery, the defendant said he was willing to "work with" the plaintiff, and he was willing to depose Fausing in "the next 3 months, 4 months, 5 months, 6 months, whenever he is going to be [here]." The defendant clearly was not prejudiced by Fausing's failure to appear within 30 days of this statement. He manifested a willingness to wait six months to depose him.

 Before imposing the death penalty sanctions, the trial court should decide if the party acted in flagrantly bad faith or if the party's lawyer callously disregarded the responsibilities of procedure. *TransAmerican,* 811 S.W.2d at 918 (citing *National Hockey League v. Metropolitan Hockey League, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976)). Even before *TransAmerican,* this Court and others required the trial court to find "bad faith" before imposing the ultimate sanction. *See, e.g., City of Dallas v. Cox,* 793 S.W.2d 701, 724 (Tex.App.—Dallas 1990, no writ) (the defendant, the city of Dallas, had repeatedly refused to comply with discovery requests, had destroyed,

misplaced, or withheld relevant requested material); *McRae v. Guinn Flying Services,* 778 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1989, no writ) (no evidence in the record the plaintiff acted in bad faith or willfully disobeyed an order of the court); *Assicurazioni Generali, S.p.A. v. Milsap,* 760 S.W.2d 314, 316 (Tex.App.—Texarkana 1988, writ denied) (defendant received, yet failed to timely respond to various discovery requests and failed to appear at the hearing on the motion for sanctions). The trial court should not assess sanctions which preclude presentation of the merits of the case "absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Koepp v. Utica Mut. Ins. Co.,* 833 S.W.2d 514, 515 (Tex.1992) (quoting *TransAmerican,* 811 S.W.2d at 918).

In applying this test, we can absolve the plaintiff's counsel from any bad faith because the trial court found that only the plaintiff, not its lawyer, had frustrated the discovery process. Thus, we look to the conduct of the plaintiff to see if it warranted the sanction. After reviewing the record, we find no evidence the plaintiff acted in bad faith or willfully disobeyed an order of the court.

We find the sanction imposed on the plaintiff, the dismissal of plaintiff's suit, did not relate to Fausing's failure to appear at deposition.

### b. *Sanctions must not be excessive*

The facts in this case are quite similar to those in *TransAmerican,* where discovery sanctions were imposed for failure to produce a party for deposition. In *TransAmerican,* the Texas Supreme Court ruled there was nothing in the record that justified inflicting such a harsh penalty on TransAmerican for the plaintiff's president's failure to present himself for deposition. *TransAmerican,* 811 S.W.2d at 918–19. Here, just like *TransAmerican,* there is nothing in the record to indicate the district court considered imposition of lesser sanctions or that such sanctions would not have been effective. *Id.* Interestingly enough, the defendant suggested a few

alternatives to the trial court as sanctions the plaintiff. The defendant asked the court to impose court costs and fees of not less than $5,000 in the form of sanctions. In an earlier motion, the defendant also suggested:

> that all proceedings in this case be stayed until compliance by the Plaintiff with the outstanding discovery; that the Plaintiff be prevented from conducting further discovery; that the Plaintiff be held in contempt pending compliance with the outstanding discovery; and that the Court impose all other just sanctions.

The trial court did not follow any of the defendant's suggested alternatives.

■ If a party refuses to obey a court order or disregards some mandatory rule of procedure, before imposing death penalty sanctions of dismissal, the trial court should impose some sanction less severe and oppressive. *TransAmerican*, 811 S.W.2d at 917. A permissible sanction should be no more severe than required to satisfy legitimate purposes. *Chrysler Corp.*, 841 S.W.2d at 849. If the less severe sanction does not secure compliance, the court is then justified in imposing the ultimate sanction.

The plaintiff asserts Fausing is the only person capable of answering questions as the corporate representative of the plaintiff. Fausing was physically unable to attend the deposition before January 1992.

We find that the sanction imposed on the plaintiff, the dismissal of plaintiff's suit, was an excessive sanction for the failure of Fausing to appear at deposition.

We sustain the plaintiff's point of error.

**2. De novo versus abuse of discretion**

■ Under point of error one, the plaintiff argues that the standard we should apply to review a death penalty sanction is de novo review, not abuse of discretion. The difference between the two standards of review is the amount of deference the appellate court gives to the trial court's decision. In an abuse of discretion standard, we give a great deal of deference to the decision of the trial court. In a de novo review, we give the decision of the trial court less deference and review the record anew.

In reviewing the propriety of sanctions, the appellate courts have repeatedly said we will not set aside a trial court's decision on sanctions unless we find the trial court clearly abused its discretion. *See, e.g.,* *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990); *McConnell v. Memorial Const. Co.*, 821 S.W.2d 166, 167 (Tex.App.—Houston [1st Dist.] 1991, no writ).

The plaintiff does not cite any case in which the appellate courts have said that the proper standard to review death penalty sanctions is the de novo review. It is, however, unnecessary for us to address the proper standard for reviewing a death penalty sanction. In this case, we have held the trial court abused its discretion, thus satisfying the more difficult burden.