E. Duff TRIMBLE & Estella
Trimble, Appellants,

v.

Charles ITZ d/b/a Itz Electric Company
& Harold E. Hall Construction
Co., Inc., Appellees.

No. 04–94–00108–CV.

Court of Appeals of Texas,
San Antonio.

March 29, 1995.

Rehearing Denied April 17, 1995.

Thomas S. Harmon, Douglas & Elms, Inc., San Antonio, for appellants.

John Curney, Jr., Johnson, Curney & Fields, P.C., San Antonio, Craig C. Radtke, Gish & Radtke, P.C., Boerne, for appellees.

Before LOPEZ, HARDBERGER and DUNCAN, JJ.

HARDBERGER, Justice.

This is an appeal from a partial summary judgment granted in favor of Charles Itz, Individually, d/b/a Itz Electric Co. ("Itz"). The appellants also appeal from an order imposing "death penalty" sanctions against them. The primary issue in this appeal is whether an insurance company may assume the consumer status of its subrogee for purposes of bringing a claim under the Texas Deceptive Trade Practices Act.

## Background

On August 25, 1990, the Trimble's home caught fire which led to the destruction of most of the home and its contents. The home was constructed by Harold E. Hall Construction Co. ("Hall") in 1986 with the electrical work being done by Itz. State Farm Lloyds, Inc. reimbursed its insureds, the Trimbles, $537,760.83 towards their losses. State Farm Lloyds brought suit against these appellees and other defendants in the Trimbles' name as their subrogee. The causes of action alleged against Hall and Itz include breach of contract, breach of warranty, negligence and violations of the Deceptive Trade Practices Act.

Hall and Itz filed a Joint Motion for Summary Judgment and Motion for Rule 13 Sanctions. Itz also filed a separate motion for summary judgment asserting that an insurance company is not a "consumer" under the DTPA. The Joint Motion for Summary Judgment was denied and the Joint Motion for Rule 13 Sanctions was granted. Itz's Motion for Partial Summary Judgment on the lack of consumer status for the insurance company was granted. The trial court entered an order severing the summary judgment and the sanctions order. The sanctions included striking State Farm's (the Trimbles') pleadings and a take nothing judgment was entered in favor of Hall and Itz. The sanctions order also awarded Hall and Itz attorney's fees. State Farm appeals from the partial summary judgment order and from the sanctions order. The judgment is reversed in part and affirmed in part.

## Status of State Farm under DTPA

In its first point of error appellants allege that the trial court erred in granting Hall's partial summary judgment because State Farm was entitled to sue through its insureds for damages under the DTPA.

Although this action is styled *Duff and Estella Trimble v. Itz, et al.*, it is undisputed that State Farm Lloyds is actually the plaintiff pursuing this claim as subrogee of the Trimbles. Appellant argues that due to its subrogation rights, it may sue under the DTPA in the name of its insureds and claim their consumer status. Appellant's reasoning is that in a subrogation relationship the insurance company receives the rights of its insured to the extent of payments made under the insurance contract. State Farm ar-

gues that as subrogor, it may step into its insured's shoes and assume their consumer status for purposes of the DTPA.

It is undisputed that only a "consumer" has standing to maintain a private cause of action for a violation of the Deceptive Trade Practices Act. TEX.BUS. & COMM.CODE ANN. § 17.41, *et seq.; Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983). A consumer is defined as follows:

> Consumer means an individual, partnership, corporation, this state, or a subdivision or agent of this state who seeks or acquires by purchase or lease, any goods or services except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation of entities with assets of $25 million or more.

TEX.BUS. & COMM.CODE § 17.45(4) (Vernon 1987). It is also undisputed that State Farm has assets in excess of $25 million and does not have consumer standing under the DTPA. However, State Farm argues that due to the nature of its claim for subrogation, it does not need to satisfy the definition of consumer under the DTPA. Instead, it assumes the Trimbles' consumer status as part of its subrogation rights. We do not agree.

The legislature defined business consumer as an entity with less than $25 million in assets. The legislature specifically defined which individuals and entities have standing to assert private claims for violations of the DTPA. State Farm does not qualify. The legislature made no exceptions for subrogees. It is fair to assume that many if not most subrogees will have assets in excess of $25 million like State Farm. To read into the DTPA such a provision would expand the DTPA far beyond what the legislature intended. "It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. (Citation omitted). Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose. Only when it is necessary to give effect to clear legislative intent can we insert additional words or requirements into a statutory provision." *Cameron v. Terrell & Gar-*

*rett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). We see no reason to judicially engraft an exception for subrogees to the DTPA's requirement of less than $25 million in assets to assert a claim.

Furthermore, State Farm has failed to bring forward any cases which hold that a subrogee which cannot satisfy the definition of consumer in its own right may assume the consumer status of its subrogor for purposes of bringing a DTPA claim. State Farm directs this court's attention to *McAllen State Bank v. Linbeck Construction Corp.*, 695 S.W.2d 10 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). However, that case does not support State Farm's position. There, the bank/subrogor brought a DTPA action and qualified as a consumer in its own right. The bank's insurer/subrogee intervened in the action and asserted its subrogation claim. The court held that the intervenor was entitled to recover only to the extent of its payment to the bank. *Id.* at 24, n. 5. *McAllen State Bank* did not involve a subrogee bringing a DTPA claim and asserting its subrogor's consumer status. That case also highlights the traditional method for an insurer to assert its subrogation claim. Nothing in our opinion today prohibits an insurer from pursuing a valid subrogation claim in a DTPA lawsuit brought by its insured/subrogor.

We hold that State Farm does not qualify as a consumer in its own right and may not assume the consumer status of its insured/subrogor for purposes of pursuing a DTPA claim. We overrule State Farm's first point of error and affirm the trial court's granting of a partial summary judgment.

### "Death Penalty" Sanctions

█ In its second point of error, appellant complains that the trial court erred and abused its discretion by granting "death penalty" sanctions because they were not just and reasonable. In this case, the trial court granted the defendant's Motion for Rule 13 Sanctions and struck the plaintiffs' pleadings.

Texas Rule of Civil Procedure 13 directs the trial court to impose appropriate sanctions available under rule 215(2)(b) if a plead-

ing, motion or other paper is groundless and brought in bad faith or for purposes of harassment. *See Susman Godfrey, L.L.P. v. Marshall,* 832 S.W.2d 105, 108 (Tex.App.—Dallas 1992, orig. proceeding). When considering a motion for sanctions under Rule 13, trial courts shall presume that pleadings, motions, and other papers are filed in good faith. TEX.R.CIV.P. 13. Before finding a Rule 13 violation, a trial court must "examine the facts available to the litigant and the circumstances existing at the time the document is filed ... [and] whether ... the legal arguments asserted are 'warranted by a good faith argument for the extension, modification or reversal of existing law.'" *Home Owners Funding Corp. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ). Rule 13 also requires the trial court to set forth with particularity the acts or omissions on which the sanctions are based. *Zarsky v. Zurich Management, Inc.,* 829 S.W.2d 398, 399 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). A trial court's Rule 13 sanctions order is reviewed for an abuse of discretion. *Yang Ming Line v. Port of Houston Auth.,* 833 S.W.2d 750, 752 (Tex.App.—Houston [1st Dist.] 1992, no writ).

 The trial court should impose "death penalty" sanctions only when the party so abuses the rules of procedure, that the trial court can presume the party's case lacks merit, and it would be unjust to allow presentation of the case to the court. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 918 (Tex.1991); *F.N. Fausing Trading*

*v. Estate of Barbouti,* 851 S.W.2d 314, 316 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Rendition of a default judgment as a sanction ought to be the exception rather than the rule. *Id.* at 316–17. In deciding whether death penalty sanctions were properly imposed, we must consider two factors: (1) the sanctions must relate directly to the abuse; and (2) the sanctions must not be excessive. *TransAmerican,* 811 S.W.2d at 917.

 In the present case the trial court gave numerous reasons for striking the pleadings and rendering a default judgment against State Farm as to Hall and Itz.[1] The first ground can be generally summarized as failing to give proper pre-suit notice. Texas Property Code § 27.004(a) provides that pre-suit notice of claim must be given to the contractor sixty days prior to filing any claim seeking damages from a contractor arising from a construction defect. The provision is nearly identical to the pre-suit notice provision contained in the DTPA. *See* TEX.BUS. & COMM.CODE ANN. § 17.505 (Vernon Supp. 1995). Texas courts have held that when noncompliance with the DTPA's notice requirement is brought to the court's attention prior to trial the appropriate remedy is abatement in order to allow the plaintiff time to comply with the notice requirement. *See Hines v. Hash,* 843 S.W.2d 464, 469 (Tex. 1992). The Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT. art. 4590i, § 4.01 (Vernon Supp 1995), also provides for pre-suit notice in health care liabili-

---

1. The trial court's findings are summarized as follows:

1) The plaintiffs failed to comply with the pre-suit notice requirements of Tex.Property Code § 27.004. The court also found that it was practical for State Farm to have complied. The court also found that State Farm had conferred with Defendant Hall numerous times prior to bringing suit against him when State Farm was aware or should have been aware that it would claim Hall was responsible for a construction defect in the house.

2) That State Farm's petitions and amendments were groundless because it had failed to comply with the notice requirement of the Property Code. Also that State Farm's suit was groundless because it was taken contrary to statements made by Duff Trimble, the putative plaintiff. That Duff Trimble stated that

State Farm's liability allegations were not based upon the true facts of the case.

3) The court found that Duff Trimble testified in his deposition that he would not have maintained this lawsuit on his own and that State Farm had attempted to pressure him into taking a position that was not true and that he was satisfied with the work done by Hall and Itz.

4) The court also found that there was no evidence upon which a verdict could be rendered in this case because the Trimbles had destroyed the evidence which would support a judgment for State Farm. The court did not find that the destruction of the evidence was intentional.

5) The court found that lesser sanctions would be "ineffective regarding the removal of the above-referenced defendants" from the case.

ty claims. The proper remedy for failing to give the required notice under article 4590i is also abatement of the lawsuit and not dismissal. *Schepps v. Presbyterian Hosp.*, 652 S.W.2d 934, 938 (Tex.1983). The court, in both of the above cases, looked to the purpose served by the notice requirement, encouragement of pre-suit negotiations to avoid the expense of litigation, and concluded that the purpose is better served by abating the action rather than dismissing it. *Hines*, 843 S.W.2d at 468. Therefore, we conclude that failure to provide notice pursuant to Property Code § 27.004(a) requires abating the action for sixty days in order to give the claimant time to comply with the statute and does not provide a basis for dismissing the claim or imposing Rule 13 sanctions.

■ The second reason given by the trial court for striking State Farm's pleadings is that State Farm had taken a position contrary to the wishes of its insureds, the Trimbles. The court also stated that the facts alleged in the petition were not the "true facts." This court knows of no rule of law that requires an insured to agree with the position taken by its insurer when asserting a claim for subrogation. As to whether or not the facts are the "true facts" of the case, the court's *denial* of defendants' motion for summary judgment on all of State Farm's claims demonstrates that the court was persuaded that there were genuine issues of material fact present in State Farm's claims. *See* Tex.R.Civ.P. 166a. It is impossible to see how the court's ruling that there were genuine issues of material fact present can be squared with a ruling that State Farm's pleadings were groundless, brought in bad faith or for purposes of harassment.

The third reason given in support of the sanctions order is that there was insufficient evidence upon which State Farm could go to trial on its claim of a defective wire. Again, it is difficult to reconcile this finding with the fact that at the same hearing the trial court denied Hall and Itz's Motion for Summary Judgment. If in fact there was no evidence on which to go to trial, then the proper course would have been for the judge to grant the summary judgment instead of striking State Farm's pleadings.

The record before us shows that the issue of the wire's defectiveness is disputed. State Farm's expert has stated that he believes, after reviewing the evidence available to him, that the fire was caused by a defective wire. The trial court impliedly found this evidence sufficient when it denied defendants' motion for summary judgment. State Farm's effort to establish that Itz and Hall had defectively installed a wire which caused the fire in question is not groundless. The parties devote a portion of their argument to the issue of spoliation of evidence, yet the court's order does not sanction the plaintiffs for spoliation of evidence. Instead, the court states that due to the destruction of the wire there is *no evidence* on which plaintiffs may base their claim. Because the trial court's order is not founded upon spoliation of evidence, there is no need for this court to address the issue.

The parties spend a great deal of time discussing an affidavit given by Hall at State Farm's request prior to Hall being named as a defendant. The court's order does not refer to this affidavit. Since the court did not list the affidavit as being in violation of Rule 13 there is no need for us to address the issue either.

■ The trial court abused its discretion in determining that the plaintiffs' claims were groundless. Furthermore, Rule 13 requires that the district court must find that plaintiff's assertions were made in bad faith or for the purpose of harassment. The movant for Rule 13 sanctions has the burden to overcome the presumption that pleadings are filed in good faith. *GTE Communications v. Tanner*, 856 S.W.2d 725, 731 (Tex.1993). The defendants failed to carry that burden. It should also be noted that even if plaintiffs' pleadings had violated Rule 13, there is nothing in this record to suggest that an appropriate sanction could not have been imposed that was far less severe than striking plaintiffs' pleadings. *Id.* In this case the trial court also abused its discretion in striking the plaintiff's pleadings.[2] We affirm the appellants' second point of error.

We affirm the partial summary judgment concerning plaintiffs' DTPA cause of action

2. In their briefs, appellees argue that the trial

court's order imposing sanctions can also be

and we set aside the district court's sanction order.

DUNCAN, Justice, dissenting.

Because I believe that State Farm, as subrogee, succeeded to all the rights and remedies of its subrogors—including their consumer status under the Texas Deceptive Trade Practices Act—and because I believe public policy not only does not preclude but weighs in favor of such an assignment, I respectfully dissent.

By paying the Trimbles' loss, State Farm became a pro tanto owner of the Trimbles' causes of action against Itz and Hall Construction. *See Thoreson v. Thompson,* 431 S.W.2d 341, 347 (Tex.1968). No formal assignment of the claims was necessary, because the insurer's payment operates as an equitable transfer of the claims. *See id.; see also International Ins. Co. v. Medical–Professional Bldg.,* 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). When claims are thus assigned, the subrogee may bring suit either in its own name or in the name of its subrogor. *See Texas Mach. & Equip. Co. v. Gordon Knox Oil & Expl. Co.,* 442 S.W.2d 315, 317 (Tex.1969).

The DTPA cause of action asserted by State Farm in this case is thus that of the Trimbles. Accordingly, as subrogee, State Farm stands in the Trimbles' shoes, and the extent of its remedies and the measure of its rights are controlled by those possessed by the Trimbles. *See Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex.1992); *Interstate Fire Ins. Co. v. First Tape,* 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied). If the Trimbles would have had consumer status to pursue a DTPA claim against Itz and Hall, then State Farm, as the Trimbles' subrogee, stands in their shoes.[1] *McAllen State Bank v. Linbeck Constr. Corp.,* 695 S.W.2d 10, 24 n. 5 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (without in any way limiting its holding to subrogees that intervene, rather than file suit either in their own name or in the name of their subrogors, court holds that bank's subrogee stands in bank's shoes for purposes of consumer status under the DTPA).[2] If State Farm recovers an amount in excess of its payment, then the excess should be awarded to the Trimbles. *Id.* They may choose to collect this excess or to forego collection.

In short, it is simply no answer to say, as the majority does, that State Farm would not qualify as a consumer. State Farm is asserting the Trimbles' claim as the Trimbles' subrogee. If the Trimbles had consumer status as to this claim, then State Farm, as the Trimbles' subrogee, stands in their shoes. Nor is it any answer to say, as the majority does, that State Farm is limited to intervening in an action brought by the Trimbles. State Farm is entitled to pursue the Trimbles' claim in its own name or in the Trimbles' name, and its right of subrogation is in no way dependent upon the Trimbles' wishes. For these reasons, I dissent.

[redacted]

upheld under the court's inherent power to impose sanctions. The order imposing the sanctions is clearly based on Rule 13 violations and no mention is made of sanctions being imposed pursuant to the court's inherent power. Therefore, there is no need for us to address the issue of a trial court's inherent power to sanction in this case. *See Metzger v. Sebek,* 892 S.W.2d 20 (Tex.App.—Houston [1st Dist.], 1994).

1. I recognize that public policy precludes the assignment of certain types of causes of action. *See, e.g., Elbaor v. Smith,* 845 S.W.2d 240 (Tex. 1992) (invalidating Mary Carter agreement, in which plaintiff assigns part of cause of action to settling defendant); *International Proteins Corp. v. Ralston–Purina Co.,* 744 S.W.2d 932, 934 (Tex. 1988) (invalidating joint tortfeasor's purchase of cause of action from plaintiff to whose injury joint tortfeasor contributed); *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313 (Tex.App.—San Antonio 1994, writ ref'd) (invalidating client's assignment of legal malpractice claim arising out of underlying claim to plaintiff in underlying claim). However, the same public policy that underlies the doctrine of subrogation—ensuring that tortfeasors ultimately pay the loss occasioned by their conduct, rather than insurers and the insurance-buying public—would appear to weigh in favor of permitting an insured's assignment of his DTPA claim to his insurer.

2. The only case cited by Itz in support of its argument to the contrary did not so hold and did not even involve subrogation. *See Fireman's Fund Ins. Co. v. Murchinson,* 937 F.2d 204 (5th Cir.1991).