In re Calvin D. WELLS d/b/a Wells & Sons Roofing Company, Relator.

No. 14–07–00653–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 7, 2008.

Rehearing Overruled April 3, 2008.

---

Melina B. Cain, Damian E. Lacroix, Roderick O. Gibson, Houston, for appellant.

Richard O. Werlein, Magnolia, for appellee.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## MAJORITY OPINION

LESLIE B. YATES, Justice.

In this original proceeding, relator Calvin D. Wells, d/b/a Wells & Sons Roofing Company, seeks a writ of mandamus directing the respondent, R. Jack Cagle, presiding judge of Harris County Civil Court at Law No. 1, to (1) vacate his orders of July 12, 2007 and July 27, 2007 denying relator's motion to dismiss the underlying lawsuit filed by real party Gary Roberts; (2) enter an order granting the motion to dismiss; and (3) render a final judgment dismissing all of real party's claims against relator. On August 14, 2007, this court denied relator's petition because it failed to comply with the Texas Rules of Appellate Procedure. Relator amended its petition and we granted relator's motion for reconsideration. We now withdraw our August 14, 2007 opinion and grant relator's petition for writ of mandamus.

### UNDERLYING FACTS AND PROCEDURAL HISTORY

In March of 2005, relator Calvin D. Wells, doing business as Wells & Sons Roofing Company ("Wells Roofing"), replaced the roof on Gary Roberts's home in Houston, Texas. In May of 2005, Roberts, through his attorney, notified Wells Roofing that the roof had rippled almost immediately upon installation and that "other aspects of your work were improper and insufficient." Roberts also complained specifically that Wells Roofing did not remove the old felt from the existing roof before the new roof was applied, as Wells

Roofing had purportedly represented it would do. Contending that Wells Roofing's actions and omissions constituted a violation of the Texas Deceptive Trade Practices Act ("DTPA")[1] as well as fraud, breach of warranty, and breach of contract, Roberts demanded reimbursement for the price paid for the roof, the cost of an engineer's inspection and report, and his attorney's fees.

In June of 2005, in Roberts's presence, Calvin Wells and a construction consultant inspected the roofing shingles and installation at Roberts's home. Based in part on the consultant's report, Wells Roofing made a settlement offer to Roberts in a letter dated June 28, 2005. In the letter, Wells Roofing (1) addressed each allegedly deficient condition covered in the engineer's report that Roberts had commissioned after the roof's installation and (2) offered to pay Roberts a monetary sum to cover his attorney's fees and an itemized list of repairs, modifications and alterations to the roof. Roberts's attorney received Wells Roofing's settlement offer on June 30, 2005, but Roberts did not respond to the offer.

In February of 2007, Roberts filed a lawsuit for damages against Wells Roofing, asserting breach of contract, fraud, and DTPA causes of action. In his petition, Roberts alleged that he sent Wells Roofing a timely notice of his claims as required by the DTPA but that Wells Roofing "has not offered to rectify [its] breaches." On the basis that Wells Roofing knowingly committed allegedly deceptive acts or omissions, and that it intentionally induced him to rely on false promises, Roberts prayed for actual and punitive damages plus attorney's fees.

Wells Roofing moved to dismiss the lawsuit because Roberts had failed to comply with certain provisions of the Texas Residential Construction Liability Act (RCLA).[2] After a hearing and briefing from both sides, the trial court denied the motion to dismiss on July 12, 2007. Wells Roofing then filed a motion, with briefing, asking the court to reconsider its ruling. On July 27, the court issued a second order denying both the motion to dismiss and the motion for reconsideration. This second order was based on the court's finding that Wells Roofing is not a "contractor" under the RCLA and, therefore, not subject to its provisions.

Wells Roofing filed this proceeding seeking relief, by writ of mandamus, from the trial court's orders of July 12 and July 27, 2007.

### STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when the abuse cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court could have reached but one decision. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding); *Walker*, 827 S.W.2d at 839–40. Mandamus review of issues of law is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig.proceeding).

Even where a trial court is shown clearly to have abused its discretion, the extraordinary remedy of manda-

---

1. Tex. Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 2002 & Supp.2007).

2. Tex. Prop.Code Ann. § 27.001 *et seq.* (Vernon 2000 & Supp.2007).

mus will not issue if the aggrieved party has an adequate remedy by appeal. An appellate remedy is not inadequate merely because it may involve delay and/or expense. *Walker,* 827 S.W.2d at 842; *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958) (orig.proceeding). "[O]nly when parties stand to lose their substantial rights" will the appellate remedy prove inadequate and mandamus review be appropriate. *Walker,* 827 S.W.2d at 842.

ANALYSIS

## I. Residential Construction Liability Act

The RCLA applies to "any action to recover damages or other relief arising from a construction defect, except a claim for personal injury, survival, or wrongful death or for damage to goods." Tex. Prop. Code Ann. § 27.002(a)(1) (Vernon Supp. 2007). The RCLA contains certain notice and settlement offer requirements that must precede such actions. *Id.* § 27.004. The substance of these requirements varies depending on whether the particular residential construction dispute is also subject to the state-sponsored inspection and dispute resolution process under the Residential Construction Commission Act ("RCCA").[3]

The RCCA's state-sponsored inspection and dispute resolution process applies to certain disputes between a builder and a homeowner. *Id.* § 426.001. For purposes of this action, a "builder" is defined under the RCCA as:

> any business entity or individual who ... constructs or supervises or manages the construction of:

(1) a new home;

(2) a material improvement to a home, *other than an improvement solely to replace or repair a roof of an existing home;* or

(3) an improvement to the interior of an existing home when the cost of the work exceeds $20,000.

Texas Residential Construction Commission Act, 78th Leg., R.S., ch. 458 § 1.01, 2003 Tex. Gen. Laws 1704 (emphasis added) (amended 2007) (current version at Tex. Prop.Code Ann. § 401.003(a) (Vernon Supp.2007)).[4] Because Wells Roofing's contract with Roberts involved only the replacement or repair of the roof of Roberts's existing home, Wells Roofing does not fall within the definition of "builder." Thus, the dispute between Wells Roofing and Roberts is not subject to the state-sponsored inspection and dispute resolution process of the RCCA.

With respect to a dispute not subject to the RCCA inspection and dispute resolution process, the RCLA requires a claimant to give notice to a contractor more than 60 days before filing suit. Tex. Prop. Code Ann. § 27.004(a) (Vernon Supp.2007). Such notice must specify in reasonable detail the construction defects of which the claimant complains. *Id.* Within 45 days of receiving such notice from a claimant, the contractor may make a settlement offer, in writing, to the claimant. *Id.* § 27.004(b). The contractor may offer repair of any construction defect in the notice. *Id.* The offer may provide that the contractor itself or an independent contractor will make the repair, at the contractor's expense or at a

---

**3.** The RCCA constitutes Title 16 of the Texas Property Code. Tex. Prop.Code Ann. §§ 401.001–430.011 (Vernon 2007 & Supp. 2007). The state-sponsored inspection and dispute resolution process constitutes Subtitle D of the RCCA. *Id.* §§ 426.001–430.011.

**4.** The current definition of "builder," which does not differ in any pertinent fashion from the quoted definition, does not apply to Roberts's action filed on February 2, 2007. *See* Act of June 15, 2007, 80th Leg., R.S., ch. 843 § 57, 2007 Tex. Gen. Laws 1768 ("This Act takes effect September 1, 2007.").

reduced rate to the claimant. *Id.* The offer must describe in reasonable detail the repairs that will be made. *Id.*

The repairs shall be made within 45 days from the contractor's receipt of the claimant's written acceptance of the settlement offer. *Id.* If the claimant believes the settlement offer is unreasonable, the claimant has 25 days from receipt of the offer to advise the contractor, in writing and in reasonable detail, why it considers the offer unreasonable. *Id.* § 27.004(b)(1). Within 10 days of receipt of such notice from the claimant, the contractor may make another written settlement offer. *Id.* § 27.004(b)(2).

The RCLA calls for mandatory dismissal of an action not subject to the inspection and dispute resolution process of the RCCA if, after a hearing, the court finds that the claimant failed to follow the procedures in Subsection (b). Act of June 20, 2003, 78th Leg., R.S., ch. 458 § 2.04, 2003 Gen. Laws 1725 (amended 2007) (current version at Tex. Prop.Code Ann. § 27.004(d) (Vernon Supp.2007)).[5] Even without a hearing or order of the court, such an action is automatically dismissed if (1) the contractor files a verified motion alleging the claimant failed to follow Subsection (b) and (2) the claimant does not file a controverting affidavit within 11 days from the contractor's filing of its motion to dismiss. *Id.*

The following facts are undisputed in this proceeding:

- More than 60 days before filing the underlying lawsuit, Roberts gave Wells Roofing written notice of his dissatisfaction with certain aspects of the roof and Wells Roofing's work.

- Not later than 45 days after Wells Roofing received Roberts's notice, Wells Roofing made a written offer of settlement to Roberts.

- Roberts provided neither written acceptance of Wells Roofing's offer of settlement nor written notice why Roberts considered Wells Roofing's offer of settlement unreasonable.

- On June 12, 2007, Wells Roofing filed a verified motion to dismiss Roberts's action. In its motion to dismiss, Wells Roofing alleged that "[Roberts] failed to provide ... [Wells Roofing] with any notice advising [Wells Roofing] as to why [Roberts] rejected the Settlement Offer or otherwise considered the Settlement Offer unreasonable."

- Roberts did not file an affidavit controverting Wells Roofing's verified motion to dismiss.

Wells Roofing contends the underlying action (1) was automatically dismissed on June 25, 2007, 11 days after Wells Roofing filed its verified motion to dismiss; or, alternatively (2) should have been dismissed because Roberts failed to comply with the procedures specified in RCLA § 27.004(b). Roberts disputes that the RCLA applies to his underlying action. Specifically, he contends his action against Wells Roofing does not concern "construction defects" and, alternatively, that Wells Roofing is not a "contractor" as that term is defined by the RCLA. Because the RCLA does not apply, Roberts concludes, the trial court did not abuse its discretion by denying Wells Roofing's motion to dismiss. Roberts further argues that Wells Roofing has failed to show that its remedy by appeal is inadequate and is thus not

5. The 2007 amendment changed the statute to provide for abatement, rather than dismissal, of an action brought by a claimant who failed to follow the procedures in Section 27.004(b). *See* Act of June 15, 2007, 80th Leg., R.S., ch. 843 § 3, 2007 Tex. Gen. Laws 1753 (codified at Tex. Prop.Code Ann. § 27.004(d) (Vernon Supp.2007)). The amendment took effect on September 1, 2007, after Roberts's action was filed. *Id.* § 57, 2007 Tex. Gen. Laws 1768.

entitled to mandamus relief even if the court did abuse its discretion.

## II. Did the Trial Court Abuse its Discretion by Denying Wells Roofing's Motion to Dismiss the Underlying Lawsuit?

### A. Is Wells Roofing a "contractor" for purposes of the RCLA?

■ The RCLA defines a "contractor" as follows:

> "Contractor" means *a builder,* as defined by Section 401.003, *and* any person contracting with an owner for the construction or sale of a new residence constructed by that person or of an alteration of or addition to an existing residence, repair of a new or existing residence, or construction, sale, alteration, addition, or repair of an appurtenance to a new or existing residence.

Act of June 20, 2003, 78th Leg., R.S., ch. 458 § 2.01, 2003 Tex. Gen. Laws 1723 (emphasis added) (amended 2007) (current version at Tex. Prop.Code Ann. § 27.001(5)) (Vernon Supp.2007).[6]

Because the applicable definition of "contractor" in RCLA Section 27.001 incorporates the definition of "builder" in Section 401.003, which excludes an entity that replaces or repairs the roof of an existing home, Roberts concludes Wells Roofing is not a "contractor" under the RCLA. Wells Roofing thus is not entitled, according to Roberts, to the benefits and protections of the RCLA notice and dismissal provisions contained in Section 27.004. We disagree.

Resolution of a statutory construction issue must begin with an analysis of the statute itself. *Fitzgerald v. Advanced Spine Fixation Systems, Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999) ("it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent"); *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). Where the language of the statute is clear and unambiguous, it should be given its common everyday meaning, without resort to rules of statutory construction or extrinsic aids. *Cail,* 660 S.W.2d at 815 (citing *Banks v. Chicago Grain Trimmers Assoc.,* 390 U.S. 459, 465, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968) and *Ex parte Roloff,* 510 S.W.2d 913 (Tex.1974)). Rules of construction and other extrinsic aids may not be used to create an ambiguity in a statute. *Fitzgerald,* 996 S.W.2d at 866.

The definition of "contractor" does indeed include the definition of "builder," which excludes a roofing contractor. However, the applicable definition of "contractor" is not limited to the definition of "builder"; with a conjunctive "and," it also includes "a person contracting with an owner for the construction ... of an alteration of or addition to an existing residence, [or for] repair of a new or existing residence." There is no exclusion in the latter portion of the definition of "contractor" for an entity that replaces or repairs the roof of an existing home.[7] Wells Roofing is, indisputably, a person contracting with an owner, Roberts, for the construction of an alteration to an existing resi-

**6.** This definition was amended effective September 1, 2007. Because Roberts and Wells Roofing entered into the contract for replacement of Roberts's roof in 2005, the pre-amendment definition applies to this action. *See* Act of June 15, 2007, 80th Leg., R.S., ch. 750 § 3, 2007 Tex. Gen. Laws 1554 ("[a] contract that was entered into before the effective date of this Act is governed by the law in effect when the contract was entered into").

**7.** If the legislature meant for the roofing exclusion to apply to the entire definition of "contractor," it would specifically have so provided.

dence or for repair of an existing residence. So, while Wells Roofing may not be a "builder," it is, as a matter of law, a "contractor."[8] We reject Roberts's argument that the notice, offer of settlement, and dismissal portions of the RCLA do not apply to the action below because Wells Roofing is not a "contractor."

## B. Does Roberts's action against Wells Roofing arise from a "construction defect"?

■ This issue was briefed in the trial court but not addressed in either of the orders denying Wells Roofing's motions to dismiss and for reconsideration. If, however, the record supports a finding that the RCLA does not apply because Roberts's action does not arise from a "construction defect," we will not disturb the orders. "We must uphold a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment." *Guaranty County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986) (per curiam). *See also Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex.App.—Dallas 1992, orig. proceeding) (citing *Reyna* and concluding "[t]his approach is even more compelling in a mandamus proceeding where the issue is abuse of discretion"). Accordingly, we now consider whether Roberts's action arises from a "construction defect."

"Construction defect" is defined in the RCLA as "a matter concerning the design, construction, or repair . . . of an alteration of or repair . . . to an existing residence . . . on which a person has a complaint against a contractor." Tex. Prop.Code Ann. § 27.001(4) (Vernon Supp.2007).[9] In his original petition, Roberts asserted DTPA, common law fraud, breach of con-

---

8. The roofing contractors' exclusion is not rendered "meaningless" by this conclusion. For purposes of the RCLA, whether a construction entity falls within the "builder" portion of the "contractor" definition or within the separate and independent portion of the "contractor" definition determines *not* whether the RCLA applies in the first instance but rather *which* particular provisions of the RCLA apply. *See* Tex. Prop.Code Ann. § 27.004 (providing two sets of details and timing for notice, opportunity for inspection, settlement offer, and execution of repairs, with the applicable *set* depending whether a particular action is subject to Subtitle D, Title 16). It is the fact that roofers are excluded from "builders" that makes Roberts's action subject to those notice and cure provisions specifically applicable to actions *not* covered by Subtitle D, Title 16 of the RCCA (as opposed to those provisions applicable to actions that *are* covered by Subtitle D, Title 16). There is no indication that the legislature intended to exclude roofers from the entirety of the residential construction liability scheme; there is indication only that the legislature intended to exclude roofers from the Subtitle D, Title 16, portion of the residential construction liability scheme. *See generally* Corey F. Wehmeyer, *When Good Homes Go*

*Bad: A Critical Analysis of Texas Homeowner Remedies and the TRCCA,* 38 Tex. Tech L.Rev. 185, 190 (2005) (analyzing "the procedural web of the RCLA and [ ]RCCA" and declaring RCLA's scope is more expansive than that of RCCA) (citing Cheryl Turner, *The Residential Construction Liability Act and the New Residential Construction Commission,* 7 J. Tex. Consumer L. 13, 14 2003).

9. Notably, for actions subject to Subtitle D, Title 16, the RCLA adopts the RCCA definition of "construction defect." Tex. Prop.Code Ann. § 27.001(4) (Vernon Supp.2007) (" 'Construction defect' has the meaning assigned by Section 401.004 for an action to which Subtitle D, Title 16, applies"). The RCCA definition of "construction defect" is appreciably different from the RCLA definition. *Compare id.* § 401.004 (Vernon 2007) *with id.* § 27.001(4) (Vernon Supp.2007). As explained above, however, Subtitle D, Title 16, which applies to certain disputes involving builders, does not apply to this action because, as a roofer, Wells Roofing is excluded from the definition of "builder." Therefore, for purposes of this action, the non-RCCA definition of "construction defect" is applicable.

tract, and breach of warranty causes of action against Wells Roofing. He sought to recover, among other damages, "[o]ut-of-pocket expenses, including but not limited to the cost of re-roofing, inspections, and other consequential damages." The petition did not identify the factual bases underlying the stated causes of action. However, in the demand letter Roberts sent to Wells Roofing in the month after the roofing work was complete, Roberts made these allegations:

> Mr. Roberts specifically stated and ordered that the old felt be removed before you were to install the new roof. It was not done, although you promised him that it would be done. He relied on that knowing misrepresentation, suffered damages, and would not have contracted with you had he been told the truth. The installed roof rippled promptly and still ripples to this day, some six weeks after your work was done. Additionally, other aspects of your work were improper and insufficient.

In this court, Roberts emphasizes that Wells Roofing promised, but failed, (1) to remove all old roofing materials before the new roof was installed and (2) to install a roof carrying a thirty year manufacturer's warranty. Because Wells Roofing failed to comply with these promises, Roberts maintains, he would have claims for breach of contract, fraud, and deceptive trade practices *even if* Wells Roofing had "flawlessly

performed the construction aspects of [its] work." Therefore, he concludes, his claims cannot arise from "construction defects."

However, Roberts asserted in both his trial court and appellate pleadings that Wells Roofing's improper installation of the roof forms at least part of the basis for his complaints. In the trial court, in his "Brief of Law Respecting Application of the Texas RCLA," Roberts declared that "some of [my] counts of DTPA violations do relate to the defective work of [Wells Roofing]," but argued that "the main trust [sic] of the case has nothing to do with construction defects." In this court, Roberts argued "[T]his is not a case sounding in construction defects at all, *although those are also present in abundance.*" [10] Roberts's statements suggest a belief that the RCLA applies only where defective construction is the primary basis for the claimant's lawsuit. Roberts offers, and we find, no support for such proposition, and we decline to adopt it. It is clear from Roberts's own pleadings that his action arises, to some degree, from defective construction, and the action is thus subject to the RCLA. [11] *See In re Kimball Hill Homes Texas, Inc.,* 969 S.W.2d 522, 526 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding) (confirming, in RCLA context, that "the underlying nature of the claim controls and a plaintiff cannot by

10. Emphasis added. Also in this court, Roberts summarizes his case as being "about a fundamental breach of contract ..., [Wells Roofing]'s fraudulent inducement of [Roberts] into that contract, [Wells Roofing]'s fraud in failing to disclose information he had a duty to disclose, portraying he had completed the job according to contract, and manifold violations of the DTPA by [Wells Roofing] which have nothing to do with construction defects (while others do)."

11. After the trial court denied Wells Roofing's motion to dismiss but before it denied the motion for reconsideration and entered the order finding that Wells Roofing is not a "contractor" under the RCLA, Roberts filed an amended petition. In the amended petition, Roberts added a statutory fraud cause of action and deleted his statement specifically seeking to recover the cost of re-roofing his home. This amendment does not alter our analysis or affect our conclusion that Roberts's action arises from a "construction defect" for purposes of the RCLA.

artful pleading recast a claim in order to avoid the adverse effect of a statute").

█ Moreover, under the RCLA, an action can arise out of a "construction defect" without involving defective construction or repair work. Under the express language of the statute, the complaint against the contractor must merely *concern* the design, construction, or repair of a new or existing residence (or of an alteration or addition thereto). *See* Tex. Prop. Code Ann. § 27.001(4) (Vernon Supp.2007). Even if we ignore Roberts's contention that installation of the roof was defective and consider only his claim that Wells Roofing induced him to enter the roofing contract by making promises it did not intend to keep and in fact did not keep, we would nonetheless conclude that Roberts's action *concerns* the construction of an alteration to, or the repair of, an existing residence. Accordingly, Roberts's action arises from a "construction defect" as that term is defined under the RCLA.

### III. Does Wells Roofing Have An Adequate Remedy by Appeal?

█ The purpose of the RCLA's notice requirements "is to encourage pre-suit negotiations to avoid the expense of litigation." *Kimball Hill Homes,* 969 S.W.2d at 525 (citing *Trimble v. Itz,* 898 S.W.2d 370, 373–74 (Tex.App.—San Antonio), *writ denied* 906 S.W.2d 481 (Tex. 1995)). In *In re Kimball Hill Homes,* this court held that an appeal was inadequate to remedy a trial court's failure to implement the RCLA's mandatory abatement provision when the claimants had failed to comply with statutorily prescribed notice prerequisites to filing suit against the contractor/builder. 969 S.W.2d at 524–25. If

forced to wait for appeal to present whether Roberts's failure to comply with the RCLA's notice requirements mandates dismissal of the action, Wells Roofing will endure the very expense of litigation such notice requirements were meant to avoid. We conclude that Wells Roofing does not have an adequate remedy by appeal from the trial court's refusal to dismiss Roberts's action.

CONCLUSION

█ As the terms are defined by the RCLA, Wells Roofing is a "contractor" and Roberts's action against Wells Roofing arises from "construction defects." Roberts's action is thus subject to the provisions of the RCLA, including the notice provisions of Section 27.004(b). Because Roberts failed to comply with those notice provisions, the trial court abused its discretion by denying Wells Roofing's motion to dismiss.[12] Further, because Roberts failed to file a controverting affidavit within 11 days of Wells Roofing's filing of its motion to dismiss, Roberts's action was automatically dismissed on June 25, 2007.

We conditionally grant Wells Roofing's petition for writ of mandamus. We are confident the trial court will (1) vacate its orders of July 12 and July 27, 2007 denying Wells Roofing's motion to dismiss the underlying lawsuit and (2) enter a final judgment in accordance with the automatic dismissal of the lawsuit, by statute, on June 24, 2007. If the trial court does not take such action, the writ of mandamus will issue.

SEYMORE, J., files dissent.

---

12. At the time the trial judge considered the parties' arguments and made his ruling, no appellate court had interpreted the RCLA's definition of "contractor," which incorporates a separate definition of "builder," which itself

excludes roofing contractors. However, even in an unsettled area of law, a trial court's erroneous legal conclusion constitutes an abuse of discretion. *Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex.1996).

CHARLES W. SEYMORE, Justice, dissenting.

This is a case of first impression that involves interpretation of the Residential Construction Liability Act ("RCLA").[1] I would hold that the trial court did not abuse its discretion by denying relator's motion to dismiss the underlying lawsuit. Accordingly, I respectfully dissent.

The threshold inquiry regarding protections afforded by the RCLA is whether that person is a "contractor" as defined in the act. In pertinent part, the legislature defined contractor as follows:

a builder, as defined by Section 401.003, and any person contracting with an owner for the construction or sale of a new residence constructed by that person or of an alteration of or addition to an existing residence, repair of a new or existing residence, or construction, sale, alteration, addition, or repair of an appurtenance to a new or existing resident.

Act of June 20, 2003, 78th Leg. R.S., ch 458 § 2.01, 2003 Tex. Gen. Laws 1723(amended 2007) (current version at Tex. Prop.Code Ann. § 27.001(5)) (Vernon Supp.2007).[2]

In pertinent part of the Texas Residential Construction Commission Act, "builder" is defined as:

any business entity or individual who ... constructs or supervises or manages the construction of:

(1) a new home;

(2) a material improvement to a home, *other than an improvement sole-*

*ly to replace or repair a roof of an existing home;* or

(3) an improvement to the interior of an existing home when the cost of the work exceeds $20,000

Act of June 20, 2003, 78th Leg., R.S., ch. 458 § 1.01, 2003 Tex. Gen. Laws 1704, (amended 2007) (current version at Tex. Prop.Code Ann. § 401.003(a)) (Vernon Supp.2007) (emphasis added).[3]

Regretfully, my colleagues employ a literal text interpretation to support their conclusion that the above provisions are unambiguous. The majority bases its interpretation on the broad definition of "contractor," and reasons that relator, Wells Roofing, is a contractor as defined by the RCLA because it contracted with an owner for "construction of an alteration to an existing residence or repair to an existing residence." The majority emphasizes general or broad language over specific language that pertains to the status of a person or entity engaged *solely* in the repair or replacement of roofs. The majority follows with the conclusion: "while Wells Roofing may not be a "builder," it is, as a matter of law, a "contractor." " While I agree that the definition of "contractor" includes more persons and circumstances than the definition of "builder," the majority's interpretation is flawed because general or broad language is given greater force or effect than contradictory *specific* language. Without reference to common law rules of statutory construction or the Code Construction Act,[4] the majority has ren-

1. Tex. Prop.Code Ann. § 27.001 *et seq.* (Vernon 2000 & Supp.2007).

2. The Legislature amended this definition effective September 1, 2007. *See* Tex. Prop. Code Ann. § 27.001(5). However, Roberts and Wells Roofing entered into their contract in 2005, and the pre-amendment definition applies. *See* Act of June 15, 2007, 80th Leg. R.S., ch. 750 § 3, 2007 Tex. Gen. Laws 1554.

3. The Legislature likewise amended this definition effective September 1, 2007, *See* Tex. Prop.Code Ann. § 401.003(a). However, the pre-amendment definition applies. *See* Act of June 15, 2007, 80th Leg., R.S., ch. 843 § 57, 2007 Tex. Gen. Laws 1768.

4. Tex. Gov't Code Ann. § 311.001 *et. seq.* (Vernon 2005)

dered the roofing contractor's exclusion in the RCLA meaningless.

In defining the term builder, the legislature *specifically* excluded entities that replace or repair the roof of an existing home. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 458 § 1.01, 2003 Tex. Gen. Laws 1704, (amended 2007). The legislature infused this *specific* exclusionary language into the RCLA by reference to the word "builder as defined by Section 401.003." The majority attempts to avoid the conflicting language by emphasizing the conjunctive "and" in the definition of "contractor" under Section 27.001. The majority refuses to acknowledge that there is a conflict between general language that includes any "alteration of or addition to an existing residence" and language that *specifically* excludes contracts *"solely to replace or repair a roof."*

This court should attempt to harmonize statutes and avoid an interpretation that renders any portion meaningless. *See Barfield,* 898 S.W.2d at 292. I would hold that the specific exclusionary language controls and roofers are outside the purview of the RCLA.

If possible, we must construe statutes as written and ascertain legislative intent from the text. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). However, if the plain language is susceptible to two or more reasonable interpretations a statute will be considered ambiguous, and we should refer to extra-textual sources to determine legislative intent. *See In re Mo. Pac. R.R. Co.,* 998 S.W.2d 212, 217 (Tex.1999). We must consider the statute as a whole rather than its isolated provisions, and we should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. *Helena Chem. Co.,* 47 S.W.3d at 493. We must presume that the Legislature intends an entire statute to be effec-

tive and that a just and reasonable result is intended. *Id.* Moreover, we should avoid statutory construction that renders any part of the statutory language meaningless. *See City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995). Finally, we are instructed that if a general provision of a statute irreconcilably conflicts with a special provision, the special provision prevails as an exception to the general provision. *See* Tex. Gov't Code Ann. § 311.026(b) (Vernon 2005); *Bradley v. State ex. rel. White,* 990 S.W.2d 245, 251 (Tex.1999) (Abbot J., concurring) (stating that when an irreconcilable conflict occurs between a general and a special statutory provision, the special provision prevails as an exception to the general provision).

Accordingly, I would deny the petition for writ of mandamus and remand for further proceedings in the trial court.