R. Craig ATCHLEY and Deborah Atchley, Appellants,

v.

Thomas SPURGEON and Carolyn Spurgeon, For Use of United States Fidelity & Guaranty Co., and Guy Chipman Company, Appellees.

No. 04–96–00278–CV.

Court of Appeals of Texas, San Antonio.

Jan. 28, 1998.

Daniel A. Bass, San Antonio, for Appellants.

James L. Drought, P. Jeffery Nanney, Drought & Pipkin, L.L.P., San Antonio, Michael H. Patterson, Douglas & Elms, Inc., San Antonio, Valinda J. Astoria, Douglas & Barnhill, P.C., San Antonio, for Appellees.

Before HARDBERGER, C.J., and STONE and ANTONIO G. CANTU,[1] JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal from a decision to strike a plea in intervention. In one point of error, appellants, R. Craig and Deborah Atchley (Atchleys), claim that their motion to intervene was erroneously stricken under criteria established by this court in *Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494 (Tex.App.—San Antonio 1991, writ denied). We believe *Metromedia* does not provide would-be intervenors the absolute right to disturb settlement agreements. Therefore, we affirm the judgment.

### FACTS

In 1989 the Atchleys, through their real estate agent, Guy Chipman Company (Chipman), sold their home to Thomas and Carolyn Spurgeon (Spurgeons). A year later, a plumbing leak damaged the home's foundation, and the Spurgeons filed a claim under their homeowner's policy against United States Fidelity & Guaranty Company (USF & G). Upon paying the claim, USF & G, as subrogator of the Spurgeons, demanded reimbursement from Chipman and the Atchleys. The Atchleys responded shortly thereafter with a letter from their attorney demanding that they not be named as defendants.

On April 15, 1992, USF & G filed a lawsuit, in the Spurgeons' name, against Chipman. The lawsuit alleged violations of the Texas Deceptive Trade–Practices Act (DTPA) and fraud and sought damages of over $20,000. The bases of the claim were alleged misrepresentations made by Chipman that the pipes under the home had been new when the Spurgeons made the purchase. The Atchleys were not named in the suit.

Although the parties dispute the aggressiveness of Chipman's defense in the suit, it is clear that both parties engaged in some discovery. In addition, Chipman filed a motion for summary judgment in the case, although there is nothing in the record indicating that this motion was disposed of. There was also an early attempt at mediation between the parties. In the end, however, there was no trial. According to Chipman and Spurgeon, the parties agreed on a settlement in September and October 1994. Under this agreement, Chipman agreed to pay $5,000, and USF & G agreed to release the company from further liability. Although Chipman paid the $5,000, it failed to sign the actual settlement agreement until June 1995, after the Atchleys filed their first plea in intervention. In addition, the parties failed to file the settlement and have the case dismissed, although a dismissal order was apparently drawn up. Both the Spurgeons and Chipman assert that the Atchleys knew of the settlement, and the Atchleys have not contested this.

Shortly after entering the settlement agreement with USF & G, Chipman sued the Atchleys for indemnity under the Residential Listing Agreement signed by the parties. At that point, nearly three years after the original suit was filed, the Atchleys filed their first plea in intervention. This plea did not survive a Motion to Strike Plea in Intervention. However, a procedural error afforded the Atchleys another chance, and they filed their First Amended Plea in Intervention. The Spurgeons filed a second Motion to Strike, which, after a hearing, was granted. The Atchleys appeal this ruling, alleging that they have satisfied the criteria established by the Supreme Court of Texas and this court to establish a right to intervene in litigation that affects their interests.

### DISCUSSION

■ Rule 60 of the Texas Rules of Civil Procedure sets out an applicant's right to intervene in litigation, "subject to being

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

stricken out by the court for sufficient cause on the motion of the opposite party." Tex.R. Civ. P. 60. A trial court is given broad discretion in deciding on a motion to strike, and its decision will be reversed only if it has abused that discretion. *Guaranty Federal Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990).

In *Guaranty Federal*, the supreme court held that it is an abuse of discretion to strike a plea in intervention if: (1) the intervenor can show that he could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery; (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervener's interest. *Id.*

The parties do not dispute that the Atchleys have met the first prong of this test. They were the sellers of the home and were originally targeted for litigation by USF & G. In addition, the record suggests that the Atchleys had arguable grounds for defeating the DTPA and fraud causes of action. *See Metromedia Long Distance, Inc.*, 810 S.W.2d at 497 (justiciable interest may be determined on the basis of the sufficiency of the petition in intervention). The Atchleys also allege that they would have had available to them counterclaims against USF & G, based on Texas Rule of Civil Procedure 13 and the DTPA. Clearly, they had a justiciable interest in the litigation.

■ The parties do dispute the second and third prongs of the *Guaranty Federal* criteria. The second prong allows a trial judge to strike a plea in intervention if the intervention will complicate the litigation with a multiplicity of issues. The Atchleys argue that no such complication will occur here. The issues raised by the plea in intervention, they point out, are basically the same as those that were litigated between USF & G and Chipman. However, Chipman and the Spurgeons argue that a settled case is inevitably "complicated" when it is revived by an intervention. While this is true, this is not the complication envisioned by the court in *Guaranty Federal*. What gives a trial court

grounds to reject intervention under this criterion is the injection of new issues into litigation. We do not agree that this criterion is satisfied merely because the parties have reached a settlement. *See Metromedia*, 810 S.W.2d at 497 (allowing intervention after judge found for plaintiffs).

■ We do agree with Chipman, the Spurgeons, and the trial court, however, that the third criterion set out by *Guaranty Federal*, that the intervention be nearly essential to protect the would-be-intervener's rights, is not satisfied.

The Atchleys rely heavily on *Metromedia* to argue that intervention is essential to protect their interests. In *Metromedia*, plaintiffs sued several defendants, including Metromedia, for misrepresentations concerning the value of stock. Metromedia settled with the plaintiffs and was dismissed from the case. *Metromedia*, 810 S.W.2d at 495. Four years later, right before trial was scheduled to begin, the remaining defendants requested that Metromedia defend them under an indemnity agreement. *Id.* at 496. Metromedia then sought to intervene in the litigation to protect its interests. *Id.* at 496–7. The trial court struck its first plea and then struck a second plea that alleged collusion between the parties to the litigation. *Id.* After the plaintiffs, in a non-jury trial, won a $4.6–million judgment, Metromedia appealed, afraid it would be held liable for the payment and unable to assert defenses it had against the plaintiffs.

*Metromedia* is distinguished from the case before us. Metromedia's plea in intervention followed a *trial* on the issues. *Id.* After Metromedia settled out of the litigation, the remaining defendants dropped their defenses, relying, instead, on a general denial. Thus, intervention was indeed necessary to prevent the final disposition of viable claims and defenses that would have protected Metromedia's interests. However, the Atchleys' plea follows a *settlement*, reached after a discovery period and a mediation attempt. Chipman pursued its defenses and filed a motion for summary judgment during this period. We cannot say that the Atchleys' interests were not protected.

Moreover, the Atchleys admitted at the hearing on the Motion to Strike that, if not allowed to intervene, they can still argue in the litigation pending against them that Chipman's settlement with USF & G was unreasonable, given the various defenses they claim to have. If successful, the Atchleys admit, they will be relieved of indemnifying Chipman. But this is not enough for the Atchleys. As their attorney pointed out, they would still have to pay him "a considerable amount of money when they shouldn't have." In addition, they now wish to bring counterclaims against USF & G for violations of Texas Rule of Civil Procedure 13 and under the DTPA, claiming that the suit against Chipman was brought in bad faith. These claims, they correctly note, may only be brought in the original litigation.

 A claim for Rule 13 sanctions fits within the definition of a compulsory counterclaim.

A counterclaim is compulsory if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the action is mature and owned by the pleader at the time of filing the answer; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

*Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex.1988). Rule 97 of the Texas Rules of Civil Procedure makes it mandatory that any counterclaim arising under the above criteria be raised during the initial trial involving the same transaction or occurrence. TEX.R. CIV. P. 97; *see Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992). This court suggested such counterclaims were compulsory and found them to be nonseverable in *Stroud v. VBFSB Hold-*

*ing Corp.*, 901 S.W.2d 657, 659–62 (Tex. App.—San Antonio 1995, no writ), *superceded on rehearing by Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75 (Tex.App.—San Antonio 1996, writ denied).[2]

However, while we understand the Atchleys' need to bring these claims in the original suit, we do not believe *Metromedia* offers such broad protections to would-be intervenors who have sat on the sidelines for over two years. The Atchleys are simply not in the same position as that occupied by the plaintiff in *Metromedia*. The plaintiff there had been an original defendant in the lawsuit, who had settled in apparent good faith only to discover that the remaining parties were colluding to get even more money from it. Metromedia sought re-entrance into a battle it had already joined. The Atchleys, on the other hand, actively sought to be kept out of the original litigation. It is only now, facing an indemnification suit by Chipman that could not have been a surprise, that they wish to litigate issues that have been viable for nearly five years.

 Intervention is an equitable right. *Highlands Ins. Co. v. Lumbermen's Mut. Casualty Co.*, 794 S.W.2d 600, 601 (Tex. App.—Austin 1990, no writ). In *Metromedia*, we held that where the would-be intervenor faced having its claims barred by collateral estoppel and res judicata and where those defenses were not protected due to almost certain collusion, equity required that intervention be allowed. We did not mean to suggest that possible parties to litigation could insist that they not be sued, stand back to see what the outcome of the litigation was, then attempt intervention in order to avoid paying their own attorneys' fees. Nor is it equitable to allow the Atchleys to claim, as intervenors, that a suit that they wanted no part of was brought in bad faith against the party who has settled the suit and is happy to leave the settlement intact.[3]

---

2. On rehearing, we determined that the issue of counterclaims, which we held controlled whether we had jurisdiction, has been rendered moot by appellant's non-suiting their counterclaims. *Stroud*, 917 S.W.2d at 78. However, our reasoning on the compulsory nature of Rule 13 counterclaims remains intact. *See id.* at 76 (referring to

trial court's severance of Rule 13 counterclaims as "improper").

3. Chipman's position on this issue has been that, although it believes intervention would be wasteful, it does not actively oppose it. It merely asks

Had the settling parties secured a signed dismissal of the case, the Atchleys' intervention would have been barred as a matter of law. *See Comal County Rural High Sch. Dist. No. 705 v. Nelson*, 158 Tex. 564, 314 S.W.2d 956, 957 (1958). As it is, we are left with what one of the parties has called a "quasi-final" judgment, which means that the equities of intervention must be considered. We do not here hold that the Atchleys' long delay in seeking intervention, by itself, defeats the Atchleys' plea. Nor could we hold, in light of *Metromedia*, that intervention must be denied because the litigation's resolution is "quasi-final." We merely recognize that intervention is an equitable doctrine, and, in weighing the equities, we have considered the Atchleys' long delay in filing their plea, the fact that the case was all but resolved when they filed it, and the Atchleys' own admission that, if successful in the current litigation, it can avoid indemnification. Given these considerations, we do not believe that the Atchleys' wish not to pay attorneys' fees or even to assert counterclaims they could have asserted earlier militates allowing them to intervene in what was, for all intents and purposes, a settled case.

In summary, the trial court did not abuse its discretion.

ANTONIO G. CANTU, Justice (Assigned), dissenting.

R. Craig Atchley and Deborah Atchley (Atchleys) appeal from the trial court's order striking their First Amended Plea in Intervention. For the following reasons I cannot agree with the majority and would reverse the judgment of the trial court and remand the cause for trial.

The record before this court reflects the following:

**PROCEDURAL HISTORY**

On January 13, 1989, the Atchleys entered into a Residential Listing Agreement with the Guy Chipman Company (Chipman) wherein Chipman was retained to act as listing agent and broker with respect to the sale of the Atchleys' home at 612 Canterbury Hill, in an exclusive suburb of San Antonio. On March 27, 1989, Thomas and Carolyn Spurgeon (Spurgeons) purchased the Atchleys' home. On or about August 20, 1990, the Spurgeons discovered that the house's sewage system was leaking. Investigation revealed that the drain under the foundation had cracked and that the faulty piece of drain was considerably old and decayed. The Spurgeons filed a claim under their homeowner's policy against United States Fidelity & Guaranty Company (USF & G).

As a result of payment of the claim, USF & G became subrogated under the terms of the insurance policy and on May 21, 1991, it caused a letter to be written to Chipman advising it that a law firm had been retained by the Spurgeons and demanding payment of $20,230.89 under claimed violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA)[1] and TEX. BUS. & COMM. CODE ANN. §§ 2.314[2] and 2.315,[3] and additionally seeking attorneys' fees in the amount of $500. Similar letters were written to the Atchleys on June 5, 1991, and August 6, 1991.

On April 15, 1992, USF & G filed a lawsuit in the name of the Spurgeons[4] against Chipman, alleging violations of the DTPA and common law fraud and claiming damages totaling $20,230.89.

USF & G, through the Spurgeons, alleged that Chipman had misrepresented that the drain in question was new when in fact it was not new. The Atchleys, however, were not sued by USF & G nor impleaded by Chipman as third-party defendants.

that, should this court grant intervention, the settlement be put aside.

1. TEX. BUS. & COMM.CODE ANN. § 17.41, et seq. (Vernon 1987 and Supp.1998).

2. Implied warranty of merchantability.

3. Implied warranty of fitness for particular purpose.

4. It is undisputed that USF & G is the real plaintiff pursuing the claim as subrogee of the Spurgeons. Accordingly, when we refer to the Spurgeons, we are in fact referring to USF & G.

The Spurgeons went through extensive pleadings and discovery. Chipman filed numerous pleadings but engaged only in nominal discovery.[5] Additionally, Chipman filed its motion for summary judgment, but the record does not reflect that the motion was ever urged and ruled upon. Instead, a purported settlement was reached by which Chipman paid the Spurgeons, for the benefit of USF & G, the sum of $5,000 in return for a mutual release of claims. Thereafter, Chipman sued the Atchleys in a separate lawsuit in reliance upon an indemnity provision in their real estate contract.

On May 26, 1995, the Atchleys filed their first plea in intervention in the instant lawsuit. In their plea in intervention, the Atchleys alleged affirmative defenses and counterclaims against USF & G[6] and cross-claims against Chipman. The Motion to Strike Plea in Intervention filed by the Spurgeons contains, by attachment, a copy of a purported Settlement Agreement and Release.[7] The agreement provides, among other things, that the "[r]elease does not release any of Guy Chipman Company's contribution or indemnity claims against Craig Atchley or Deborah Atchley."[8]

The trial court struck the Atchleys' Original Plea in Intervention, as well as a subsequently filed First Amended Plea in Intervention,[9] which alleged additional facts supported by new documentation.

The sole issue on appeal is whether the trial court erred in striking the Atchleys' First Amended Plea in Intervention.

In a single point of error, the Atchleys allege:

THE TRIAL COURT ERRED (ABUSED ITS DISCRETION) IN STRIKING THE ATCHLEYS' FIRST AMENDED PLEA IN INTERVENTION BECAUSE (1) THE ATCHLEYS COULD HAVE BROUGHT THEIR COUNTERCLAIMS AND CROSS CLAIMS CONTAINED THEREIN ON THEIR OWN AND, AS TO ACTIONS THAT WOULD HAVE BEEN BROUGHT AGAINST THEM, THEY WOULD HAVE BEEN ABLE TO DEFEAT RECOVERY OR SOME PART THEREOF; (2) THE INTERVENTION WILL NOT COMPLICATE THE CASE BY AN EXCESSIVE MULTIPLICATION OF THE ISSUES, AND (3) THE INTERVENTION IS ALMOST ESSENTIAL TO EFFECTIVELY PROTECT THE INTERVENORS' INTERESTS.

Therefore, the question before this court is, did the trial court abuse its discretion by precluding the Atchleys, as indemnitors, from setting up defenses and counterclaims against USF & G, the party suing Chipman, their indemnitee? I believe the answer should be in the affirmative.

### INTERVENTION

Rule 60, Texas Rules of Civil Procedure, provides that any party may intervene, subject to being stricken by the court for sufficient cause on the motion of the opposite party. But the right to intervene is an equitable right and as such does not depend upon a rule or statute for its existence. The right permits one to intervene voluntarily in the litigation of others, to protect his own rights, so long as his intervention does not delay the case or otherwise prejudice the existing litigants. *Highlands Ins. Co. v. Lumbermen's Mutual Cas. Co.*, 794 S.W.2d 600, 601–2 (Tex. App.—Austin 1990, no writ) (citing *Eccles v. Hill*, 13 Tex. 65 (1854)).

5. The majority opinion acknowledges that both parties engaged in some discovery. In truth and in fact, Chipman's efforts can barely be characterized as nominal. See appendix to this opinion.

6. The counterclaims were brought directly against USF & G and not against the Spurgeons.

7. As of the filing of the Motion to Strike Plea in Intervention on June 8, 1995, the attached "Settlement Agreement and Release" does not reflect approval or acknowledgment by Chipman.

8. At the time the Atchleys sought intervention, the case between the Spurgeons and Chipman had not been formally dismissed. There is no contention by either party that a final judgment had been entered. The Spurgeons, in fact, admitted in their motion to strike that "[a]lthough a settlement was reached in this cause ... the concluding documents were inadvertently not forwarded to the court for signing and entry."

9. The subsequent plea was filed on January 30, 1996, and was stricken on February 6, 1996.

Furthermore, under Rule 60, a person or entity has the right to intervene if the intervenor could have brought the same action, or any part thereof, in his own name, or if the action had been brought against him, he would be able to defeat recovery, or some part thereof. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990). Moreover, intervention is oftentimes favored because it encourages speedy disposition of suits and prevents multiplicity of actions. *Express–News Corp. v. Spears,* 766 S.W.2d 885, 887 (Tex.App.—San Antonio 1989, orig. proceeding).

The intervenor bears the burden to show a justiciable interest, legal or equitable, in the lawsuit, *id.,* and the party who opposes the intervention has the burden to challenge it by a motion to strike. *Guaranty Fed. Sav. Bank,* 793 S.W.2d at 657. The trial court may determine the party's justiciable interest on the basis of the sufficiency of the petition in intervention. *McCord v. Watts,* 777 S.W.2d 809, 812 (Tex.App.—Austin 1989, no writ); *National Union Fire Ins. Co. of Pittsburgh Pa. v. Pennzoil Co.,* 866 S.W.2d 248, 250 (Tex.App.—Corpus Christi 1993, no writ); *Serna v. Webster,* 908 S.W.2d 487, 492 (Tex.App.—San Antonio 1995, no writ).

The sufficiency of the petition is tested by its allegations of fact construed in conjunction with the allegations of fact set out in the pleadings of those persons resisting the intervention. *National Union Fire Ins. Co.,* 866 S.W.2d at 250; *Rogers v. Searle,* 533 S.W.2d 440, 442 (Tex.Civ.App.—Corpus Christi 1976, no writ).

The trial court is granted wide discretion in determining whether an intervention should be stricken. *Inter–Continental Corp. v. Moody,* 411 S.W.2d 578, 589 (Tex.Civ. App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.). Nevertheless, a trial court abuses its discretion if it strikes an intervention where the petition in intervention, construed in conjunction with the pleadings of the parties opposing intervention, shows that (1) the intervenor could have brought the same action, or any part thereof, in his own right; (2) the

intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Guaranty Fed. Sav. Bank,* 793 S.W.2d at 657; *Duke v. Wilson,* 900 S.W.2d 881, 885 (Tex.App.—El Paso 1995, writ denied).

The first question to be resolved in determining if the trial court abused its discretion is whether the Atchleys had a right to intervene in the pending suit between the Spurgeons and Chipman.

## THE JUSTICIABLE INTEREST

Before the Spurgeons filed suit against Chipman, they had targeted the Atchleys through letters dated June 5, 1991, and August 6, 1991.[10] In the letters purportedly sent by lawyers representing the Spurgeons, the Atchleys were informed:

Dear Mr. and Mrs. Atchley:

Please be advised that the law firm of Douglas & Elms, Inc. has been retained by Thomas & Carolyn Spurgeon in regard to the aforementioned claim.

The purpose of this letter is to set in motion the provisions of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex. Bus. & Com.Code Ann § 17.41, et. seq., and to advise you of the exact complaint of my client. Mr. & Mrs. Spurgeon are the owners of the property located at 612 Canterbury Hill, San Antonio, Texas. On or about August 20, 1990, Mr. & Mrs. Spurgeon sustained property damage as a result of a defective sewer pipe. The damages sustained by Mr. & Mrs. Spurgeon were proximately caused by leakage from a cracked sewer pipe that had decayed due to age. In the negotiations leading up to the Spurgeon's May 1991 purchase of subject property, the Sellers, Craig Atchley and his wife, Deborah Atchley, and the Real Estate Broker, Guy Chipman Company, represented that the sewer system had been recently replaced.

10. The second letter differs from the first one only in that it notified the Spurgeons and Chip-man's attorney by copy sent to them.

\* \* \*

In addition, the real estate broker and the seller breached the implied warranty of merchantability and fitness for a particular purpose, as set forth in Tex. Bus. & Com. Code Ann § 2–314 and § 2–315, respectively.

Additionally, the Spurgeons' Original Petition, First Amended Petition, and Second Amended Petition all alleged causes of action attributing, in some part, misrepresentations made by the Atchleys, as well as by their agent Chipman:

> In the negotiations leading up to the Plaintiffs' purchase of the subject property, the sellers, Craig Atchley and wife, Deborah Atchley, and the Defendant, through its agent, represented through a "Progress and Activity Report" that all drains from under the house had been recently replaced. In reliance of [sic] said representations and document, Plaintiffs entered into the contract for the purchase of the premises.[11]

\* \* \*

When the sellers of the house, Craig and Deborah Atchley and the agent for Defendant made this material misrepresentation, the sellers should have known it was false and the Defendant company made this representation recklessly without any knowledge of its truth or falsity and as a positive assertion;

In response to interrogatories propounded by the Spurgeons, Chipman identified the Atchleys as persons with knowledge of relevant facts. Moreover, Chipman's First Amended Original Answer sought to exculpate Chipman at the expense of the Atchleys:

> Prior to the consummation of the sale, Plaintiffs were aware that the Defendant was merely repeating and/or conveying information it received from the Sellers regarding the condition of the property.

In response to interrogatories, Chipman made it clear that the Atchleys were not only persons with knowledge of relevant facts, but were in all probability critical witnesses in their defense:

> Craig Atchley may testify regarding the work done at 612 Canterbury Hill, that the work represented to be done was, in fact, done, and that all work regarding the house was done in a good and workmanlike manner.

\* \* \*

> Defendant states that the representations made regarding the property are true and that Defendant was simply repeating the representations made by the seller to this Defendant, which fact was known to Plaintiffs.

Thomas Spurgeon also listed the Atchleys as persons with knowledge of relevant facts and produced a copy of the August 6, 1991, DTPA letter mailed to the Atchleys in response to a request for production.

The record, as the majority acknowledges, clearly demonstrates a justiciable interest by the Atchleys in the subject matter of the pending suit as potential targets of both the Spurgeons and Chipman.

### COMPLICATION OF THE CASE

The Atchleys' First Amended Plea in Intervention alleged some defenses identical to those raised by Chipman. In addition, the Atchleys produced deposition testimony that the elements of reliance and misrepresentations were nonexistent. In the absence of a misrepresentation and reliance, causes of action under the DTPA[12] and common law fraud cannot succeed because there can be no producing cause.[13] *See Goodrich v. Pan-*

---

11. These allegations taken from the Spurgeons' Second Amended Petition are representative of those appearing in earlier petitions.

12. Reliance is not an element that consumers are required to prove in order to recover for misrepresentations under the DTPA. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985); *Celtic Life Ins. Co. v. Coats,* 831 S.W.2d 592, 596 (Tex.App.—

Austin 1992), *modified on other grounds and affirmed,* 885 S.W.2d 96 (Tex.1994). Therefore, the Atchleys were not required to negate it under the DTPA but were required as to common law fraud.

13. To establish legal fraud with respect to a representation of a past or existing fact, it must appear that: (1) a material representation was

*dem Oil Corp.*, 48 S.W.2d 606, 609 (Tex. Comm.App.1932, opinion adopted); *Young v. Howze*, 216 S.W.2d 988, 990 (Tex.Civ.App.—Amarillo 1948, no writ).

Additionally, the Atchleys sought to show that USF & G's subrogation suit, brought in the name of the Spurgeons, could not succeed as a DTPA claim because an insurer has no right to subrogation of an insured's claim under the DTPA since it [USF & G] is not a consumer. *See Trimble v. Itz*, 898 S.W.2d 370, 372 (Tex.App.—San Antonio 1995), *writ denied per curiam*, 906 S.W.2d 481 (Tex. 1995).

Ironically, Chipman had raised the identical defense in its Second Amended Original Answer and had raised it as the basis of its filed Motion For Summary Judgment, which the record does not disclose was ever ruled on.[14]

The record reflects that, from February 24, 1994, when the Spurgeons responded to Chipman's Motion For Summary Judgment, to May 26, 1995, when the Atchleys filed their First Plea in Intervention, the only activity noted is the Spurgeons' resistance to discovery sought by Chipman.[15]

Chipman, in its counterclaim, sought to recover attorneys' fees in the event it prevailed in the lawsuit pursuant to a provision in the earnest money contract, which provided:

ATTORNEY'S FEES: Any signatory to this contract, Broker or Escrow Agent who

is the prevailing party in any legal proceeding brought under or with relation to this contract or transaction shall be additionally entitled to recover court costs and reasonable attorney fees from the non-prevailing party.

In the alternative, Chipman also sought relief by way of attorney's fees under the DTPA, claiming that the action brought by the Spurgeons was groundless and brought for purposes of harassment or in bad faith.[16]

Except for the cross-claim brought by the Atchleys against Chipman, the issues raised by the First Amended Plea in Intervention are basically the same as those that existed between the Spurgeons and Chipman. Chipman had filed a counterclaim for breach of contract and for filing a groundless, bad faith DTPA claim. Chipman's affirmative defenses included limitations, estoppel, waiver, failure to mitigate, failure to fulfill all conditions precedent, and USF & G's lack of consumer status.

The Atchleys raised the defenses of USF & G's lack of consumer status, lack of standing due to no subrogatable interest, limitations, waiver, and estoppel. The Atchleys also alleged counterclaims under the DTPA for groundless/bad faith pleadings, as well as Rule 13[17] violations. In addition, the Atchleys pleaded a conspiracy to commit constructive fraud and DTPA violations by USF & G and Chipman.

---

made; (2) it was false; (3) when made, the speaker knew it was false or made it recklessly without any knowledge of its truth or falsity and as a positive assertion; (4) it was made with the intent that it should be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury. *Roland v. McCullough*, 561 S.W.2d 207, 210 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

**14.** The Spurgeons' Response to Chipman's Motion for Summary Judgment was filed on February 24, 1994. The settlement agreement was allegedly entered into in September 1994. The agreement does disclose that it was acknowledged by the Spurgeons on September 21 and 22, 1994.

**15.** On March 3, 1994, the Spurgeons filed their objections to Chipman's interrogatory inquiring

into who would pay in the event Chipman recovered on its counterclaim. On August 30, 1994, the Spurgeons sought a protective order to prevent Chipman from deposing the Spurgeons and their expert witness. The record does not indicate that either of these hindrances to discovery were ever pursued. Instead, we are advised that a settlement was arrived at some time in September 1994. See appendix to opinion.

**16.** *See* TEX. BUS. & COMM.CODE ANN. § 17.50(c) (Vernon Supp.1998), which provides:

On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorney's fees and court costs.

**17.** TEX.R. CIV. P. 13.

It cannot, under the circumstances, be said that the intervention presented an excessive multiplication of issues. *Cf. Tony's Tortilla Factory, Inc. v. First Bank,* 857 S.W.2d 580, 589 (Tex.App.—Houston [1st Dist.] 1993), *rev'd on other grounds,* 877 S.W.2d 285 (Tex. 1994).

The Atchleys rely principally, but not exclusively, on the recent decision by this court in *Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494 (Tex.App.—San Antonio 1991, writ denied). In *Metromedia,* suit was brought by investors against the company, certain officers, and others who allegedly misrepresented the value of stocks and induced the plaintiff to sell their stock at less than fair market value. *Id.* at 495–96. Metromedia settled with the plaintiff for $150,000 and was dismissed from the lawsuit, but was, nevertheless, obligated under certain indemnification provisions in its corporate by-laws to defend some of the remaining defendants.

Subsequently, the plaintiffs amended their petition to drop their claim for gross negligence and proceeded only on simple negligence. The defendants, in turn, amended their answer by dropping all affirmative defenses and asserting only a general denial.

Four years later, the plaintiffs invoked the indemnification provisions on the eve of a nonjury trial. Metromedia responded by filing a plea in intervention, which the plaintiffs and defendants both opposed. The trial court struck the plea in intervention, and ordered a severance. Thereafter, Metromedia filed its amended plea in intervention alleging collusion between the plaintiffs and defendants in that Metromedia had been told about a "secret agreement" between the plaintiffs and defendants. In its plea, Metromedia sought to raise defenses no longer urged by the defendants. This court reversed on grounds that Metromedia would be unable to protect its rights if the trial court

did not allow the company to intervene to expose the conspiracy between the plaintiffs and Metromedia's indemnities. It was clear that allowing Metromedia to intervene was essential in permitting it to defeat recovery without complicating the case with an excessive multiplication of issues. *Id.* at 498.

The Spurgeons would distinguish *Metromedia* because the defendants therein dropped all of their defenses and proceeded only on a general denial, thus giving support to the existence of a conspiracy.

It is claimed that the instant case exhibits the contrary, because Chipman maintained all its defenses, as well as numerous counterclaims, throughout the trial. Moreover, it is claimed that settlement negotiations did not commence until Chipman's Motion For Summary Judgment was overruled. The record supports neither of these assertions.

While it may be true that Chipman maintained its defenses and counterclaims throughout the trial, nevertheless, passive advocacy is no better than abandoned advocacy.

From the record before this court, it is apparent that Chipman did not pursue any of its discovery aggressively by minimally deposing the Spurgeons.[18] Nor can this court conclude from a silent record that Chipman sought a ruling on its Motion For Summary Judgment, in spite of the Spurgeons' claim to the contrary.[19]

I believe that under the circumstances and considering Chipman's lack of aggressiveness in lending support to its position, the intervention was almost essential to effectively protect the Atchleys' interest.

## CHIPMAN'S POSITION

Chipman admits that the Spurgeons' DTPA claims are barred as a matter of law because USF & G is not a consumer in its own right. *Trimble,* 898 S.W.2d at 372.

---

**18.** The record reflects that Thomas Spurgeon never signed his response to Chipman's interrogatories because he wanted to make corrections. Although he communicated the proposed corrections to his attorney, he was never presented with corrected responses to sign. There is nothing in the record indicating Chipman's attempt to compel compliance with discovery. On the

other hand, the Spurgeons aggressively sought and obtained discovery from Chipman.

**19.** Chipman's Motion For Summary Judgment contains a notice of setting for March 4, 1994, but there is no order indicating the motion was ever presented for ruling by the court.

Chipman further admits that it had urged the same in its Motion For Summary Judgment, filed over one year prior to the *Trimble* decision. But Chipman insists, as the Spurgeons claim, that settlement negotiations did not commence until the Motion For Summary Judgment was overruled. Chipman further argues that the Spurgeons' DTPA claim was viable when the settlement agreement was reached because *Trimble* had not yet been decided.[20] However, I would like to think that Chipman held a good faith belief in the position it advanced in its Motion For Summary Judgment, which the record does not indicate was ever advanced.

But even if the Spurgeons' DTPA claim had been arguably viable before the *Trimble* decision, it is clear that Chipman could have prevailed against such a claim by negating the element of misrepresentation.[21] Such could have been accomplished by the simple expediency of obtaining the Spurgeons' depositions and seeking summary judgment.

Chipman did not oppose the initial plea in intervention. In its response to the Spurgeons' Motion to Strike the Atchleys' First Amended Plea in Intervention, Chipman urged that the settlement agreement it entered into with USF & G (Spurgeons) should be set aside in the event the trial court denied the Spurgeons' motion. Chipman otherwise did not oppose the Atchleys' intervention.[22] Even now, on appeal, Chipman does not oppose the intervention. Its only argument on appeal is that "it is difficult to conceive of a case which can be made more complicated than by reviving a lawsuit which has already been settled by the parties."

But was the settlement entitled to recognition by the court? [23]

## THE SPURGEONS' POSITION

The Spurgeons' only stated reason for urging the trial court to strike the Atchleys' intervention was that the intervention would complicate the case by breathing life into a case that had been settled.

On appeal, the Spurgeons for the first time argue that the trial court did not abuse its discretion in striking the intervention because the plea was untimely filed.[24] They recognize that an intervention is barred by law when it is attempted after a judgment is final. *See Comal County Rural High Sch. Dist. No. 705 v. Nelson,* 158 Tex. 564, 314 S.W.2d 956, 957 (1958); *Spears,* 766 S.W.2d at 888.

The Spurgeons, however, argue, and the majority agrees, that the Atchleys' Motion to Intervene was untimely because they chose to wait over two years and approximately seven months after the final settlement between the litigants to intervene. However, there is no contention that a final judgment existed at such time, nor that an agreement had been made known to the trial court. An undisclosed settlement cannot be the basis of a final judgment. *See* TEX.R. CIV. P.R. 11.[25]

Additionally, the Spurgeons say they have the right to choose whom they sue. This approach, however, begs the question. The Atchleys do not take issue with this contention. They do, however, insist that they have a right to intervene to effectively protect their interests.

---

**20.** Ironically, the issue raised by Chipman was originally raised by counsel for the Spurgeons in *Trimble.* The decision in *Trimble* was not released until March 29, 1995.

**21.** Chipman could also have prevailed against the common law fraud claim by negating the elements of misrepresentation and reliance.

**22.** Chipman's position at the hearing on the Spurgeons' Motion to Strike Intervention is best reflected by the remarks of its counsel:

> Counsel: [N]ow my position is if Atchley wants in this lawsuit, I'll welcome him into the lawsuit.... But if he wants in, I don't have any particular objection so long as my settlement agreement is set aside.

**23.** I will address the validity of this settlement agreement infra.

**24.** The Spurgeons recognize that Chipman has adopted this position in its brief and they, likewise, reurge it in their brief.

**25.** The rule provides:

> RULE 11. AGREEMENTS TO BE IN WRITING
> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Finally, the Spurgeons insist that the settlement could have been entered into between the Spurgeons (USF & G) and Chipman even had the Atchleys been a party to the suit. While this is true, it is doubtful that Chipman's indemnification claim against the Atchleys would have survived a successful defense by the Atchleys.[26] Even then, the Atchleys would have remained as parties to urge their position.

## NECESSITY OF PARTICIPATION TO PROTECT INTEREST

There remains but the majority's observation that the Atchleys, by their own admission can successfully litigate some of the claims against them in a subsequent lawsuit. The majority also recognizes that the Atchleys will not be able to urge the identical claims urged by Chipman against the Spurgeons in a subsequent lawsuit.

Ironically, the majority recognizes the Atchleys' justiciable interest in the litigation and at the same time minimizes the Atchleys' claims by concluding that the intervention is not almost[27] essential to effectively protect the Atchleys' interest.

Had the Spurgeons sued the Atchleys as they did Chipman, the Atchleys would have had, in addition to the right to assert the same defenses raised by Chipman, the right to bring counterclaims for violations of TEX.R. CIV. P. 13 and TEX. BUS. & COMM.CODE ANN. § 17.50(c) (Vernon Supp.1997), just as Chipman had done.

The striking of the Atchleys' Plea in Intervention deprives them of asserting their counterclaims against the Spurgeons. *See Stroud v. VBFSB Holding Corp.,* 901 S.W.2d 657, 660–61 (Tex.App.—San Antonio 1995), *superseded on rehearing by* 917 S.W.2d 75 (Tex.App.—San Antonio 1996, writ denied) (finding error in severance of Rule 13 counterclaims); *Kazmir v. Suburban Homes Realty,* 824 S.W.2d 239, 246 (Tex.App.—Texarkana 1992, writ denied) (counterclaim for attorney's fees under the DTPA is not severable).

It would appear that, under the circumstances, intervention is absolutely essential to effectively protect the Atchleys' counterclaims. Nevertheless, whether or not the Atchleys believe that they can successfully avoid indemnification in the other litigation should have no bearing on their right of intervention. It is sufficient that they have met the criteria in *Guaranty.*

My main opposition to the majority opinion, however, lies in my inability to, in good conscience, ascribe any validity to a phantom claim of settlement that did not reveal its presence until after the Atchleys filed their plea in intervention. By conferring validity to a settlement agreement that did not com-

---

**26.** A reading of Thomas Surgeons' deposition testimony attached to the Atchleys' First Amended Plea in Intervention makes clear that USF & G's subrogation lawsuit was shaky at best. The following is representative:

(Counsel for the Atchleys) Q: [M]y question was whether or not it was—I mean if it [the unreplaced drain pipe] was, in fact, a misrepresentation from a technical sense, was that a misrepresentation that you relied on in purchasing the house?

(Spurgeon) A: I don't think that that factor alone would have changed our decision to buy the house.

Q: So, in essence the answer would be, no, that was not a material . . .

A: That's correct, that's not a material misrepresentation in our mind that would have changed our decision in buying the house.

\* \* \* \* \*

Q. [W]as one of the questions—one of the interrogatories what facts you had to substantiate the allegations that there was any kind of fraud or intentional misrepresentations or violations of the Deceptive Trade Practices Act? Do you recall an interrogatory asking something like that, what were the facts you contend to support that?

A. Yeah, I think I do remember one. There was one question having to do with the word "intentional." And I know that we answered at least on this tape that we sent to Douglas & Elms that we knew of no facts that there was an intentional—an intention to misrepresent the facts. So, having to do with intention, we're very clear in our response that there was nothing there that we knew of that there was an intentional misrepresentation.

**27.** The majority prefers the expression "nearly" rather than "almost."

ply with Rule 11 of the Texas Rules of Civil Procedure, the majority encourages the use of an instrumentality that could well be used to circumvent every Rule 60 intervention. Such cannot be the intent of the law.

Moreover, if the Atchleys met the criteria set out in *Guaranty Federal,* 793 S.W.2d at 657–58, and the case was still pending, it is immaterial that the specter of a belated claim of untimeliness suddenly arises. This is especially true because the trial court may permit intervention even after a judgment has been entered, if its jurisdiction has not expired, by the simple expediency of setting aside its judgment as between the original litigants and granting a new trial. *See Comal County Rural High School Dist.,* 314 S.W.2d at 957; *Lumbermen's Mut. Cas. Co.,* 794 S.W.2d at 604; *Spears,* 766 S.W.2d at 888. *Compare Texas Supply Center, Inc. v. Daon Corp.,* 641 S.W.2d 335, 337 (Tex.App.—Dallas 1982, writ ref. n.r.e.) (error in striking intervention filed one week before hearing on motions for summary judgment); *Tony's Tortilla Factory, Inc.,* 857 S.W.2d at 590 (plea in intervention filed two weeks before trial setting).

The majority simply ascribes too much validity to an alleged settlement agreement known only to the opponents of the intervention.

### THE SO–CALLED SETTLEMENT AGREEMENT

The general rule is that an agreement for judgment, like other agreements in a pending lawsuit, will ordinarily not be enforced "unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX.R. CIV. P. 11; *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984); *Clanin v. Clanin,* 918 S.W.2d 673, 676 (Tex.App.—Fort Worth 1996, no writ); *Moseley v. Emco Mach. Works Co.,* 890 S.W.2d 529, 530 (Tex.

App.—El Paso 1994, no writ). There is no contention that compliance with Rule 11 was ever had in this case.[28] Nothing prevented either party from changing its mind and revoking the settlement agreement at any time before judgment was rendered. *See Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983); *Clanin,* 918 S.W.2d at 677; *Baccus v. Baccus,* 808 S.W.2d 694, 699 (Tex.App.—Beaumont 1991, no writ). Moreover, the lack of diligence ascribed to the Atchleys by the majority in sitting on the sidelines for over two years can be assigned to the Spurgeons and to Chipman as well. In fact, the Spurgeons and Chipman were presumptively non-diligent in disposing of their jury trial within the time standards for the disposition of cases. *See* TEX. GOVT.CODE ANN. T.2, Subt. F App., Jud. Admin., Rule 6 (Vernon 1988), which provides in pertinent part:

> District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards;
>
> * * *
>
> b. Civil Cases other than Family Law
>
> (1) Civil Jury Cases
>
> ... Within 18 months from appearance date.

The record indicates that the lawsuit was filed by the Spurgeons on April 15, 1992, and that Chipman made its appearance on April 28, 1992. The final judgment of dismissal was not entered until February 9, 1996, long after the Atchleys had intervened. Delay by the Atchleys in filing their plea in intervention under the circumstances herein, where nothing had been done by the Spurgeons and Chipman, is a non-issue.[29] *See Texas Dept. of Health v. Buckner,* 950 S.W.2d 216, 219

---

**28.** In fact, by the Spurgeons' own admission, the only evidence before the trial court at the motion to strike intervention was that Chipman had not yet approved the agreement at the time the plea in intervention was filed.

**29.** Untimeliness was never an issue raised by either the Spurgeons or Chipman when opposing

intervention. It is now belatedly raised on appeal for the first time. Nor has there ever been a contention that intervention would delay the case or otherwise prejudice the existing litigants. Chipman's position is to the contrary, seeking only to have the agreement set aside.

(Tex.App.—Fort Worth 1997, n.w.h.) (court abused its discretion in denying intervention before the entry of judgment and while parties were in the process of proving up the settlement agreement in court.); *see also In re Estate of York,* 951 S.W.2d 122, 124 (Tex. App.—Corpus Christi 1997, n.w.h.) (error to strike intervention pleading filed five days before trial date.).

Intervention is untimely only when a judgment has been rendered and becomes final. *Comal County Rural High Sch. Dist.,* 314 S.W.2d at 957; *see also Citizens State Bank of Sealy, Tex. v. Caney Inv.,* 746 S.W.2d 477, 478 (Tex.1988).

Finally, the majority opinion gives absolutely no consideration to the law's favor of intervention because it encourages a speedy disposition of suits and avoids or prevents a multiplicity of actions. *See Guaranty,* 793 S.W.2d at 658; *Spears,* 766 S.W.2d at 887.

In order to do complete justice without the need for multiplicity of litigation, judicial economy dictates that the Atchleys intervene and participate in the one trial. It is without question that the Atchleys' rights and interests will be affected by the judgment in this case. Ironically, the trial court's ruling and the majority's affirmance has had the opposite effect as evidenced by needless costly appeals and additional trials. Because the Atchleys met all of the requirements entitling them to intervene, I respectfully dissent. I would hold that the trial court abused its discretion in striking the Atchleys' First Amended Plea in Intervention. For the reasons herein enumerated, I would further hold that the error complained of probably caused the rendition of an improper judgment.[30] The judgment of the trial court should be reversed and the cause remanded for trial.

## APPENDIX "A"
## PERTINENT CHRONOLOGY OF THE CASE

| DOCUMENT | DATE OF FILING, EXECUTION OR ENTRY |
| --- | --- |
| 1. Residential Listing Agreement executed | January 13, 1989 |
| 2. Sale of Atchley home | March 27, 1989 |
| 3. Spurgeons discover leak in sewage drain | August 20, 1990 |
| 4. Letter from Spurgeons to Chipman | May 21, 1991 |
| 5. Letter from Spurgeons to Atchleys | June 5, 1991 |
| 6. Letter from Spurgeons to Chipman re: claim | July 12, 1991 |
| 7. Second letter from Spurgeons to Atchleys | August 6, 1991 |
| 8. Spurgeons v. Chipman lawsuit filed | April 15, 1992 |
| 9. Chipman files general denial answer | April 28, 1992 |
| 10. Spurgeons send out Interrogatories, Request for Admissions, and Request for Production to Chipman | July 31, 1992 |
| 11. Chipman responds to Spurgeons' Interrogatories, Request for Admissions and Request for Production | August 31, 1992 |
| 12. Spurgeons' Interrogatories and Request for Admissions to Chipman | September 3, 1992 |
| 13. Chipman's Answers to the Spurgeons' Request for Admissions filed | October 5, 1992 |
| 14. Spurgeons file jury demand. | March 10, 1993 |
| 15. Chipman's Request for Production to Spurgeons | November 30, 1993 |
| 16. Chipman's Interrogatories to Carolyn Spurgeon | November 30, 1993 |
| 17. Chipman's Interrogatories to Thomas Spurgeon | November 30, 1993 |

**30.** Rule 44.1 of the Texas Rules of Appellate Procedure, effective September 1, 1997, now provides:

(a) *Standard for reversible error.* No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:
(1) probably caused the rendition of an improper judgment; or
(2) probably prevented the appellant from properly presenting the case to the court of appeals.

| | | |
|---|---|---|
| 18. | Chipman's counterclaim filed | November 30, 1993 |
| 19. | Chipman's First Amended Answer filed | December 10, 1993 |
| 20. | Chipman's Supplemental Response to Spurgeon's Interrogatories filed | December 10, 1993 |
| 21. | Spurgeons' answer to Chipman's counterclaim filed | December 13, 1993 |
| 22. | Spurgeons' First Amended Petition filed | December 23, 1993 |
| 23. | Spurgeons' Second Amended Petition filed | December 30, 1993 |
| 24. | Spurgeons' First Amended Answer to Chipman's counterclaim filed | January 4, 1994 |
| 25. | Thomas Spurgeon's objections to Chipman's Interrogatories filed | January 4, 1994 |
| 26. | Spurgeons' Responses and Objections to Chipman's Request for Production | January 4, 1994 |
| 27. | Carolyn Spurgeon's Answers and Objections to Chipman's Interrogatories filed | January 4, 1994 |
| 28. | Chipman's Second Amended Answer filed | January 5, 1994 |
| 29. | Chipman's Second Set of Interrogatories to Thomas Spurgeon | February 3, 1994 |
| 30. | Chipman's Motion for Summary Judgment | February 3, 1994 |
| 31. | Spurgeons' Response to Chipman's Motion for Summary Judgment | February 24, 1994 |
| 32. | Thomas Spurgeon's Answers and Objections to Chipman's Second Set of Interrogatories | March 3, 1994 |
| 33. | Chipman's Motion for Summary Judgment set for hearing | March 4, 1994 |
| 34. | Spurgeons' Motion for Protective Order | August 30, 1994 |
| 35. | Thomas Spurgeon acknowledges Settlement Agreement and Release | September 21, 1994 |
| 36. | Carolyn Spurgeon acknowledges Settlement Agreement and Release | September 22, 1994 |
| 37. | *Trimble v. Itz,* 898 S.W.2d 370 (Tex.App.— San Antonio 1995) *denied per curiam,* 906 S.W.2d 481, decided | March 29, 1995 |
| 38. | Atchleys' First Plea in Intervention filed | May 26, 1995 |
| 39. | Spurgeons' Motion to Strike Plea in Intervention filed | June 8, 1995 |
| 40. | Notice of Oral Deposition given | June 9, 1995 |
| 41. | Spurgeons' Motion to Quash and for Protective Order filed | June 13, 1995 |
| 42. | Oral deposition of Thomas Spurgeon taken | June 13, 1995 |
| 43. | Joint Motion of Spurgeons and Chipman for Dismissal with Prejudice filed | July 12, 1995 |
| 44. | Order of Dismissal with Prejudice entered | July 12, 1995 |
| 45. | Order granting new trial | January 17, 1996 |
| 46. | Atchleys' First Amended Plea in Intervention filed | January 30, 1996 |
| 47. | Spurgeons' Motion to Strike First Amended Plea in Intervention filed | January 31, 1996 |
| 48. | Spurgeons' Motion for Dismissal with Prejudice filed | January 31, 1996 |
| 49. | Chipman's Response to Motion to Strike First Amended Plea in Intervention filed | February 5, 1996 |
| 50. | Chipman's Response to First Amended Plea in Intervention | February 5, 1996 |
| 51. | First Amended Plea in Intervention stricken | February 6, 1996 |
| 52. | Order striking First Amended Plea in Intervention entered | February 9, 1996 |
| 53. | Order dismissing with prejudice the claims of Spurgeons and counterclaims of Chipmans entered | February 9, 1996 |