Opinion
issued August 31, 2010

 

 

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-01024-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



RIMKUS CONSULTING GROUP, INC., Appellant

 

V.

 

CONCIERGE CARE NURSING CENTERS, INC.; HOUSTON
CONCIERGE CARE, L.P.; KEY EQUIPMENT FINANCE, INC. F/K/A KEY CORPORATION
CAPITAL, INC.; MAUREEN GAUGHAN, CHAPTER 7 BANKRUPTCY TRUSTEE OF ROBERT A.
RUSSELL; BAY 4 CAPITAL PARTNERS, INC.; CLAIRE AND BROOK STROM; and EDWARD L.
ABRAM LIVING TRUST, Appellees

 

 



On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2002-15652E

 

 



MEMORANDUM OPINION

Appellant, Rimkus Consulting Group,
Inc. (“Rimkus”), challenges the trial court’s order striking its petition in
intervention in the garnishment action of appellees, Key Equipment Finance,
Inc. F/K/A Key Corporation Capital, Inc. (“Key”), Maureen Gaughan, Chapter 7
Bankruptcy Trustee of Robert A. Russell (“Bankruptcy Trustee”), Bay 4 Capital
Partners, Inc. (“Bay 4”), Claire and Brook Strom (“Strom”), and Edward L. Abram
Living Trust (“Abram”) (collectively the “Creditors”), against appellees,
Concierge Care Nursing Centers, Inc. (“CCNI”), Houston Concierge Care, LP
(“HCC”) (collectively “Concierge”).  In
its sole issue, Rimkus contends that the trial court erred in striking its
petition on the ground that Rimkus had no justiciable interest in the
garnishment action of the Creditors against Concierge.

We affirm.

Background 

Concierge
contracted with several construction contractors to build a nursing facility in
Houston, Texas.  Just as the facility was
opening, Concierge discovered a mold problem and had to shut down the
facility.  Concierge contracted with
Rimkus to provide an assessment of the mold problem and to act as its expert in
the anticipated litigation.  Concierge
then retained the law firm Jackson Walker, L.L.P. as counsel and subsequently
filed suit against the construction contractors (the “underlying suit”).  After Concierge failed to pay Rimkus for its
services, Rimkus stopped work on the case, leaving Concierge without an expert
for the underlying suit.  On January 18,
2002, Concierge signed an Acknowledgement of Debt and Agreement for Payment (the
“Acknowledgement”) in which Concierge noted that it owed Rimkus approximately
$111,202.03 plus interest (the “debt”) for services already rendered and Rimkus
agreed to resume providing services.  In
the Acknowledgement, Concierge promised to make an initial payment to Rimkus of
$30,000 on the debt by January 15, 2002, and monthly payments of $10,000
thereafter.  Concierge released Jackson
Walker and, on January 23, 2002, signed a Power of Attorney and Contingent Fee
Contract (the “contingent fee contract”) with the John O’Quinn Law Firm to
represent it in the underlying suit.  

After Concierge
failed to pay Rimkus as per the Acknowledgment, Rimkus again stopped work.  On April 30, 2002, the O’Quinn Law Firm, on
behalf of Concierge, sent to Rimkus a letter (the “Letter”), acknowledging that
Concierge owed Rimkus the debt as reflected in the Acknowledgment and representing
that, “These funds will be paid preferentially to Rimkus from the proceeds
[Concierge] receives from the [underlying suit].”  On August 15, 2002, Rimkus and the O’Quinn Law
Firm entered into a “Services Agreement” for Rimkus to act as a consultant to
the O’Quinn Law Firm for the underlying suit. 
Thereafter, Rimkus provided its services, invoiced the O’Quinn Law Firm,
and received payment.  

While the underlying
suit was pending, the Bankruptcy Trustee, on May 5, 2006, obtained a judgment
against Concierge, and, on June 23, 2006, filed against the O’Quinn Law Firm
and Concierge a Writ of Garnishment, in which it asserted a claim against any funds
received by Concierge in settlement of the underlying suit.  Concierge and the O’Quinn Law Firm filed a
motion to consolidate the Bankruptcy Trustee’s writ into the underlying suit,
and the motion was granted.  On November
4, 2002, Key obtained a judgment against HCC, and, in a “Workout Agreement”
with CCNC and HCC, it was assigned a 70% interest in any recovery obtained in
the underlying suit after the fees and expenses of the O’Quinn Law Firm were
paid.  Bay 4 obtained a judgment against
HCC on October 31, 2002, and, on May 29, 2003, it filed an “Application for
Turnover Order” seeking execution against a portion of the settlement proceeds
from the underlying suit.  Key intervened
in the turnover action, asserting its own right to the settlement proceeds.  Concierge and the O’Quinn Law Firm then consolidated
the turnover action into the garnishment action into the underlying suit.  

Strom and
Abram sued Concierge in Colorado and subsequently entered into settlement
agreements in which each was assigned five percent of the net proceeds received
by Concierge in the underlying suit.  To
protect their assignments, Strom and Abrams intervened in the garnishment portion
of the underlying suit.  The trial court
determined the order of priority of the Creditors to the proceeds received by
Concierge in the underlying suit and, on August 21, 2006, entered its “Unopposed
Order of Turnover and on Garnishment.” 

On November
28, 2006, after Rimkus had learned that Concierge had entered into settlements
with various defendants in the underlying suit and had received some settlement
funds without paying Rimkus as per the terms of the Letter, Rimkus filed its
petition in intervention in the underlying suit.  Rimkus asserted that under the Letter it had
a “preferential right” to the settlement proceeds and the Letter identified the
debt as a “litigation expense.” 
Alternatively, Rimkus asserted that the Letter created in Rimkus by
assignment from Concierge a “right in the litigation.”

The
Creditors moved to strike Rimkus’s petition on the ground that Rimkus had no
“justiciable interest” in the proceeds because, unlike the Creditors, it had no
judgment against Concierge or any assignment of a portion of the proceeds from
the underlying suit.  They asserted that
Rimkus did not have an assignment, but instead only a promise from Concierge
and the O’Quinn Law Firm that it would be paid preferentially from the proceeds
received by Concierge in the underlying suit. 
The Creditors alternatively argued that even if Rimkus had a justiciable
interest, its intervention would unduly complicate the proceedings because
Rimkus would be asserting against Concierge a breach of contract claim, which
was not related to the negligence claims asserted by Concierge in the underlying
suit.  Rimkus responded that the Letter
unambiguously assigned to it an interest in the proceeds that Concierge
received in the underlying suit, giving it a justiciable interest for its
intervention, and, alternatively, its claim was no different from the Creditors
who had already intervened and been consolidated into the underlying suit; that
is, Rimkus sought only to intervene in the garnishment portion of the underlying
suit to establish its priority to the settlement proceeds.  Rimkus also requested a jury trial on its
claim.  

On December
13, 2006, the trial court entered an order disbursing the proceeds from the underlying
suit to the Creditors except for that portion disputed by Rimkus, $171,025.32
(the “Rimkus Funds”).  On January 10,
2007, the trial court entered an agreed order in which it noted that Rimkus had
agreed that the Rimkus Funds were not “a litigation expense that was incurred
pursuant to the [Contingency Fee Contract]” between the O’Quinn Law Firm and
Concierge.

On December
4, 2007, the trial court, without making findings of fact and conclusions of
law, entered its order striking Rimkus’s petition.  Two days later, Rimkus filed a motion to
retain funds in the registry of the court requesting that the trial court
continue to retain the Rimkus Funds pending its appeal of the trial court’s
order striking its petition.  The trial
court denied Rimkus’s motion on January 14, 2008 and ordered the Rimkus Funds
to be distributed to the Creditors.  On
July 21, 2009, after its appeal of the trial court’s order striking its
petition was dismissed for want of jurisdiction, Rimkus filed a motion asking
the trial court to reconsider its order striking its petition.  The trial court denied Rimkus’s motion and
entered an order severing Rimkus’s claims from the underlying suit.

Standard of Review

We review a trial court’s ruling on a
motion to strike a petition in intervention for an abuse of discretion.  Guar.
Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990).
 A trial court abuses its discretion when
it strikes the petition in intervention of an intervener with a justiciable
interest that (1) asserts an action, or any part thereof, that the intervenor could
have brought in its own name, (2) will not complicate the case by “an excessive
multiplication of the issues,” and (3) is “almost essential to effectively
protect the intervenor’s interest.”  Id.  

Motion to Strike

In its sole issue, Rimkus argues that
the trial court erred in striking its petition in intervention because (1) it
had a “justiciable interest” in the garnishment portion of the underlying suit
by way of the Letter, which gave it a “preferential right” to the proceeds
Concierge received in the underlying suit, (2) it could have “brought an action
in its own name to recover proceeds obtained in [the underlying suit],” (3) its
intervention would not have “excessively multiplied the issues” because it only
sought to intervene in the garnishment portion, which purpose was to determine
the priority of the Creditors to the proceeds, and not the underlying suit
between Concierge and the construction defendants, and (4) its intervention was
“almost essential to effectively protect its interest” because it would be
“prejudiced in presenting its claim in another forum as there was no assurance
the garnished funds . . . would remain intact while a separate lawsuit was
proceeding.”

The injection of new issues into
litigation excessively multiplies issues and gives a trial court grounds to
strike a petition in intervention.  Law Offices of Windle Turley, P.C. v. Ghiasinejad,
109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.); Atchley v. Spurgeon, 964 S.W.2d 169, 171 (Tex. App.—San Antonio
1998, no pet.).  Here, Rimkus sought to
intervene in the garnishment portion of the underlying suit in which all of the
other parties were either existing judgment creditors with liquidated claims or
undisputed assignees with assignments in the proceeds of the underlying suit.  None of the Creditors had to take action
within the context of the garnishment portion to establish its claim against
Concierge.  At the time of its
intervention, Rimkus had no judgment against Concierge and no undisputed
assignment in the proceeds of the underlying suit.  To establish a preferential right in the
proceeds, Rimkus would have to join the O’Quinn Law Firm as a party to the suit
to determine whether or not the Letter created a contract between Rimkus and
the O’Quinn Law Firm.  The O’Quinn Law
Firm may be expected to assert as a defense that it was merely acting as the
agent of Concierge in drafting the Letter or, if the Letter was sent on its own
behalf, that there was no contract because there was no consideration from
Rimkus for its promise.  Additionally,
Rimkus must try its breach of contract claim against Concierge to establish not
only the liquidated amount of its claim but whether the Letter created in
Rimkus an assignment in the proceeds from the underlying suit giving it
priority over the Creditors.  Concierge
may be expected to assert defenses of limitations and lack of consideration for
its promise.  Finally, if the fact-finder
determines that Rimkus does not have an assignment but some form of contract,
it must determine the legal effect on Rimkus’s priority against the Creditors
of the language in the Letter that Rimkus would be paid “preferentially” from
the proceeds of the underlying suit.  These
are all issues that are unrelated to the purpose of the garnishment portion,
which was to determine the priority of persons with existing, undisputed judgments
or assignments to the proceeds from the underlying suit.  Though Rimkus asserts that it was merely
asking the trial court to determine its priority in relation to the Creditors,
its priority against the Creditors cannot be determined until the issues
previously noted have been resolved.  On
this basis, we conclude that Rimkus’s petition in intervention injected new
issues into the garnishment portion of the underlying suit.  See Windle Turley, 109 S.W.3d at 70.  Accordingly, we hold that the trial court did
not abuse its discretion in striking Rimkus’s petition in intervention.

We overrule Rimkus’s sole issue.

Conclusion

          We
affirm the order of the trial court.

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel consists of Justices Jennings, Alcala,
and Massengale.